# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## WCA 04-985


**JUAN RIVERA**

**VERSUS**

**M&R CABLE CONTRACTORS, INC.**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 4
PARISH OF LAFAYETTE, NO. 01-09031
SAM L. LOWERY, WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*

**BILLY HOWARD EZELL**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Marc T. Amy, and Billy Howard Ezell, Judges.

**AFFIRMED AS AMENDED AND REMANDED.**


**Mark Alfred Ackal**
**Attorney at Law**
**P. O. Box 52045**
**Lafayette, LA 70505**
**(337) 237-5500**
**Counsel for: Defendant/Appellant**
**M & R Cable Contractors, Inc.**

**Michael Keith Leger**
**DeJean & Leger, L.L.C.**
**806 S. Main**
**Opelousas, LA 70570**
**(337) 948-9066**
**Counsel for: Plaintiff/Appellee**
**Juan Rivera**

**EZELL, JUDGE.**

M&R Cable Contractors, Inc., and its insurer, Bridgefield Casualty Insurance Company, appeal a judgment of the Office of Workers' Compensation which found that Juan Rivera was its employee and, therefore, entitled to workers' compensation benefits. It also appeals the amount of indemnity benefits and the award of penalties and attorney fees.

## FACTS

M&R was a business located in Pine Prairie, Louisiana, engaged in the business of installing satellite and cable television. The company was started in 1996 by Ricky Hazleton and his son-in-law, Mike Fontenot. The business was incorporated a few years later, with Mike owning fifty percent of the stock and his wife Penny, Ricky's daughter, owning the other fifty percent of the stock. Ricky explained that, although he was not listed on the documents, he did receive fifty percent of the profits at times.

M&R received orders from a cable company. In turn M&R then issued work orders to its installers. From the record, it appears that each installer had a certain area he would work. Penny worked in the office handling the payroll, secretarial work, and sending the men out on their jobs. Juan was one of the installers for the company from November 2000 to April 2001. Juan's wife, Deloris, is Ricky's sister. She also worked with the company along with her son, Willie Ford, and Juan. Juan and Willie did not have driver's licenses, so Deloris would drive them to the different jobs.

In April 2001, Juan went to work for T&T Pipeline & Construction Company. He worked through the end of June, at which time the job he was on was completed. On July 23, 2001, Juan was installing cable on one of M&R's jobs when he fell from

a twenty to twenty-five foot extension ladder to the ground suffering serious injuries. Among other injuries, Juan suffered a left pelvic fracture and L1, L2 body fractures. He was initially taken by ambulance to the emergency room in Natchez, Mississippi. However, due to the serious nature of his injuries, he was later transferred to St. Francis Cabrini Hospital. Doctors at that hospital thought Juan would be better served by having surgery in a major trauma center, so he was transferred to New Orleans.

M&R and Bridgefield denied Juan's request for workers' compensation or medical indemnity benefits. Juan filed a disputed claim with the Office of Workers' Compensation on December 10, 2001. A trial on the matter was held on June 20, 2003. After trial, the workers' compensation judge (WCJ) rendered oral reasons for judgment. The judge ruled that Juan was an employee at the time of the accident thus he was entitled to workers' compensation benefits. Juan was awarded temporary total disability benefits at the rate of $323.17 per week commencing with the date of the accident. M&R and Bridgefield were also held responsible for all work-related medical expenses. Additionally, penalties in the amount of $4,000 as well as attorney fees in the amount of $9,000 were awarded. It is from this judgment that M&R and Bridgefield appealed.

## EMPLOYEE STATUS

M&R first argues that the WCJ erred in finding that there was an employment relationship between it and Juan. It claims that this finding was clearly wrong because the testimonies of Juan, his wife, his sister-in-law, his brother-in-law, and his step-son are inconsistent.

The WCJ, in oral reasons for judgment, explained his conclusion that Juan was an employee as follows:

2

Now while not very articulate, he was believable. Under strong pointed cross examination he never wavered, and his story, taken in context, makes much more sense than the various versions of the circumstances suggested by the owner.

The defense is apparently correct that payroll records do not support his employment status; however, testimony showed that the payroll practices of the company in existence were charitably put, very creative. It was a strange operation until one remembers that this was one big once happy family.

Close attention, careful attention to these witnesses especially the owners, real and otherwise, would force any reasonable person to reach the conclusion that Juan Rivera was, in fact, an employee of a company who owners promptly, almost instantly erased him from corporate memory when he was seriously injured.

The Workers' Compensation Law does provide a presumption that a person rendering a service for another in trades, businesses or occupations which are covered by the Workers' Compensation Law are employees. La.R.S. 23:1044. M&R does not deny that Juan was rendering a service that was part of its business at the time of his accident. It simply claims that it did not hire him so he was not an employee of the business. Therefore, the burden was on M&R to prove, with evidence sufficient to overcome the presumption, that Juan was its employee. *Estate of Harris v. Ledet*, 95-485 (La.App. 3 Cir. 11/2/95), 664 So.2d 561, *writ denied*, 95-2894 (La. 2/2/96), 666 So.2d 1102.

While we agree that the testimonies were somewhat inconsistent, there was an agreement that Juan had been hired to help Willie because Willie had fallen behind on his orders due to a hand injury. Deloris explained that when Mike was approached about the problem, he indicated that Juan should be hired to help Willie because Juan had the experience. Meanwhile, Juan was waiting on another job from the pipeline while Willie continued to get further behind on his orders. Deloris and Mike then contacted Ricky who also told them to get Juan to help. Juan then went back to work for M&R on July 16.

3

Ricky agreed that Deloris and Willie asked him if they could get Juan to help out. He told them to go ahead.

Pam Hazleton also worked at M&R. She is Deloris' and Ricky's sister. She testified that she was in the office a few days before the accident when the secretary indicated that Juan was helping Willie so they were catching up. She also stated that Deloris told her that Ricky had asked that Willie get Juan to help him. Furthermore, Willie testified that Juan had been at work a week and one day when the accident occurred. Willie also agreed that Juan came back to work to help him catch up.

On the other hand, Mike claims to know nothing about Juan working for M&R. He explained that he and his wife were surprised to hear about Juan's accident because they did not know he was on the job. He testified that he never authorized anyone to hire Juan. It was Mike's testimony that, although Ricky did all the firing, he never hired anyone. He explained that Ricky could request that someone be hired and then they would talk about it.

However, Ricky never gave the impression that he could not make hiring decisions. Ricky testified that sometimes either of them may hire someone and then discuss it later.

Penny agreed that both Ricky and Mike hired people. Penny recalled that Deloris and Willie had discussions about Willie needing help, but had no idea that Juan had been hired.

M&R also relied on evidence that Juan was not in the computer system as an employee. Ricky explained that sometimes they hire people and it may be a week before the person is placed into the computer system. Ricky also testified that Mike was upset after the accident because Juan was not in the computer system because he thought "they were going to get [him]," presumably referring to the insurance

4

company.  Deloris also testified that Penny told her that Juan was not covered for workers' compensation benefits because he was not in the computer system.

Juan testified, through an interpreter because he speaks Spanish and very little English.  Juan claims that Mike asked him to quit his job with the pipeline and return to M&R.  He testified that this conversation took place the day before the accident.  Juan's testimony was then somewhat inconsistent because the accident happened the first day back at work and then he said he had been at work for a week.  The WCJ did find that, while Juan was not very articulate, he was very believable.

We agree with the WCJ that Juan was an employee of M&R. This is based on the simple fact that Ricky, who was agreed to have the ability to hire by everyone except Mike, admitted he hired Juan.  While Mike disagrees, the evidence is clear that he was at least probably aware that Juan was going to be hired to help Willie.  The fact that Juan may not have been put in the computer system does not deprive him of employment status with the company.  We agree with the trial court that Juan believed that he had been hired by M&R.  This is especially true given the fact that he had worked for the company before and his step-son, whom he previously worked with, needed help.  M&R failed to overcome the presumption that Juan was an employee of the company.

### TEMPORARY TOTAL DISABILITY BENEFITS

M&R disagrees with the rate of temporary total disability benefits awarded by the WCJ. The WCJ found that Juan was entitled to $323.17 per week.  M&R claims that Juan presented no evidence whatsoever as to what he earned or what he was expected to earn, so he was entitled to only the minimum compensation rate of $104 a week.

5

The parties agree that Willie and Juan were paid by the job. Therefore, La.R.S. 23:1021(10)(d), regarding other wages, is applicable to this case to determine Juan's average weekly wage and provides:

> **Other wages.** If the employee is employed on a unit, piecework, commission, or other basis, his gross earnings from the employer for the twenty-six week period immediately preceding the accident divided by the number of days the employee actually worked for the employer during said twenty-six week period and multiplied by the average number of days worked per week; however, if such an employee has worked for the employer for less than a twenty-six week period immediately preceding the accident, his gross earnings from the employer for the period immediately preceding the accident divided by the number of days the employee actually worked for the employer during said period and multiplied by the average number of days worked per week.

At trial, the bookkeeping practices, which were a little odd, of the company were explained. When Juan and Willie worked together, one would receive a check one week for the work performed by both that week and the other would receive a check the next week for the work performed by both. There was also some indication that any money Deloris was entitled to was included in these checks.

Payroll records of Juan's earnings that he received when he worked for M&R in late 2000 and early 2001 were introduced into evidence. Juan's 1099 tax forms from M&R showing his income during this period were also introduced. Penny, as the bookkeeper, agreed that these documents reflected the amount that Juan earned during that period.

Since Juan only worked one week prior to the accident and the company would not issue any check to him because it took the position he was not its employee after the accident, the WCJ relied on Juan's last sixteen weeks of employment with M&R, including the time he worked in late 2000 and early 2001. M&R would have the court ignore the actual wages earned by Juan when he was employed by M&R, and instead, award the minimum amount compensable under the law since there is no

6

evidence that Juan can use to prove what he would earn during the present employment since he only worked a week.

We do not find the WCJ's reliance on the wages Juan earned when he worked in late 2000 and early 2001 to be in error. These wages were actual wages earned by Juan at M&R that were "immediately preceding" his accident. The wages earned by Juan during this time were earned only a few months before the accident and are a reliable indicator of Juan's earning potential at M&R at the time of his accident. These wages are the best evidence of what Juan could have earned had he continued in employment with M&R.

## MEDICAL EXPENSES

The WCJ awarded Juan all medical expenses incurred as a result of the accident. M&R claims that this was error because all of his medical expenses were not emergency in nature and were not pre-approved by either M&R or Bridgefield. M&R relies on La.R.S. 23:1142(B)(1) which provides:

> **Nonemergency care.** (1) Except as provided herein, each health care provider may not incur more than a total of seven hundred fifty dollars in nonemergency diagnostic testing or treatment without the mutual consent of the payor and the employee as provided by regulation. Except as provided herein, that portion of the fees for nonemergency services of each health care provider in excess of seven hundred fifty dollars shall not be an enforceable obligation against the employee or the employer or the employer's workers' compensation insurer unless the employee and the payor have agreed upon the diagnostic testing or treatment by the health care provider.

Louisiana Revised Statutes 23:1142(C)(1) provides that consent is not necessary for emergency treatment. Juan asserts that La.R.S. 23:1142(C)(1) is applicable to his situation because all his medical expenses were emergency.

Our review of the medical evidence indicates that all of Juan's medical expenses were of an emergency nature incurred in treating the serious injuries he sustained in the fall, including surgery for a broken pelvis. Juan's injuries included

7

(1) a closed fracture of the left acetabulum; (2) a closed fracture of the sacrum with no mention of spinal cord injury; (3) a closed fracture of the pelvis; (4) a closed fracture of the lumbar spine without spinal injury; and (5) abdominal pain, left lower quadrant. Juan's injuries were so severe that he was transferred to a hospital in New Orleans that was better equipped to deal with his injuries.

Furthermore, M&R has always denied that Juan was its employee and that his injuries were compensable, so approval would never have been forthcoming. La.R.S. 23:1142(E); *Parfait v. Gulf Island Fabrication, Inc.*, 97-2104 (La.App. 1 Cir. 1/6/99), 733 So.2d 11. We agree with the WCJ's finding that M&R was responsible for all of Juan's medical expenses.

## PENALTIES AND ATTORNEY FEES

The WCJ awarded Juan $2,000 in penalties for failure to commence benefit payments in addition to a $2,000 penalty for failure to pay medical expenses. Attorney fees in the amount of $9,000 were also awarded. M&R claims that penalties and attorney fees are inappropriate in this matter. It claims that the adjuster investigated the claim in good faith and had just cause in denying it.

Pursuant to La.R.S. 23:1201(F), an employee is entitled to penalties and attorney fees when the employer fails to commence benefit payments and pay medical expenses. La.R.S. 23:1201(F) provides, in pertinent part:

> Failure to provide payment in accordance with this Section or failure to consent to the employee's request to select a treating physician or change physicians when such consent is required by R.S. 23:1121 shall result in the assessment of a penalty in an amount up to the greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid or such consent is withheld, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. The maximum amount of penalties which may be imposed at a hearing on the merits regardless of the number of penalties which might be imposed

under this Section is eight thousand dollars. An award of penalties and attorney fees at any hearing on the merits shall be res judicata as to any and all claims for which penalties may be imposed under this Section which precedes the date of the hearing.

Awards of penalties and attorney fees are penal in nature and are imposed to discourage indifference and undesirable conduct by employers and insurers. *Williams v. Rush Masonry*, 98-2271 (La. 6/29/99), 737 So.2d 41. These statutes awarding penalties and attorney fees are to be strictly construed. *Id*.

Whether an employer or insurer should be cast with penalties and attorney fees is a question of fact. *Authement v. Shappert Engineering*, 02-1631 (La. 2/25/03), 840 So.2d 1181. "The employer must adequately investigate the claim, and the crucial inquiry is whether the employer had an articulable and objective reason for denying or discontinuing benefits at the time it took that action." *Williams*, 737 So.2d at 46.

There has never been a question in this case that Juan was injured. There was a continual denial by Mike and his wife that Juan was an employee at the time he was injured. But the inquiry should not have ended there. As can be seen by the previous discussion in this opinion, there was an abundance of testimony from other people who worked at M&R that Juan had come back to work for the purpose of helping his stepson who had fallen behind in his work due to a hand injury. Even Juan's medical records indicate that he was working for M&R at the time of the injury. Ricky, who had authority over personnel at M&R, clearly stated that he hired Juan to help Willie. We agree with the WCJ's decision to award penalties and attorney fees.

Juan answered the appeal and asked for an increase in the amount of penalties because M&R denied payment of numerous work-related medical expenses, authorization of medical treatment, and payment of indemnity benefits. We agree that an increase in penalties is necessary for the following reasons.

9

In *Fontenot v. Reddell Vidrine Water District*, 02-439, 02-478 (La. 1/14/03), 836 So.2d 14, rehearing granted in part on other grounds, 02-442, 01-478 (La. 4/21/03), 851 So.2d 917, the supreme court held that La.R.S. 23:1201(F) provides multiple penalties for multiple violations of compensation and medical benefits claims. M&R has not made any indemnity payments or medical benefits, and is, therefore, subject to more than one penalty. With M&R's refusal to pay indemnity benefits, Juan has been deprived of multiple benefit payments. M&R is responsible for this deprivation and penalties should be accessed for each failure to pay.

Furthermore, La.R.S. 23:1201(F) mandates a penalty of the greater of twelve percent of any unpaid compensation or medical benefits or fifty dollars a day for each day the benefits remain unpaid. Juan has never received any payment. Obviously, the penalty will be greater than $4000 since there have been multiple violations which have remained unpaid for several years.

We recognize that the law now provides for a ceiling on the maximum amount of penalties at $8,000. However, this maximum penalty provision was not added until 2003 by Acts 2003, No. 1204, § 1. Furthermore, the amendment was not effective until August 15, 2003, after trial on this matter had been held. La.Const. Art. III, §19. The law in effect at the time of the denial of the benefits is the law that governs an employee's request for penalties and attorney fees. *Skipper v. Acadian Oaks Hosp.*, 00-67 (La.App. 3 Cir. 5/3/00), 762 So.2d 122. Juan was injured in 2001 before this provision was added. Failure to make payments on both compensation and medical benefits has occurred from 2001 to the date of trial. Therefore, Juan is not subject to the maximum penalty limitation of $8,000.

We find that WCJ erred in only awarding a $2,000 penalty for the denial of compensation benefits and $2,000 for M&R's refusal to pay medical bills. We,

10

therefore, remand this case to the Office of Workers' Compensation for a determination of the proper penalties.

Juan has also asked for an award of additional attorney fees for work performed on appeal. An award for attorney fees for work done on appeal is warranted when the appeal has necessitated additional work on the attorney's part. *Colonial Nursing Home v. Bradford*, 02-588 (La.App. 3 Cir. 12/30/02), 834 So.2d 1262, *writ denied*, 03-364 (La. 4/21/03), 841 So.2d 802. Obviously, Juan's attorney had to do additional legal research, prepare a brief and present argument to this court. We find that an additional award of $2,500 is reasonable under these circumstances.

Accordingly, the judgment of the trial court is amended to increase the amount of attorney fees by $2,500. Regarding the award of penalties, the case is remanded to the Office of Workers' Compensation to calculate the proper amount of penalties in accordance with the discussion in this opinion. In all other respects the judgment is affirmed. Costs of this appeal are assessed to M&R.

**AFFIRMED AS AMENDED AND REMANDED.**