892 So.2d 781 (2005)
Blake W. PLAYER, Plaintiff-Appellee,
v.
INTERNATIONAL PAPER COMPANY, Defendant-Appellant.
No. 39,254-WCA.
Court of Appeal of Louisiana, Second Circuit.
January 28, 2005.
*783 Van Hoof Law Firm, by Kathryn Fowler Van Hoof, for Appellant.
Fischer & McMahon, by Mark K. Manno, for Appellee.
Before GASKINS, DREW and MOORE, JJ.
GASKINS, J.
In this workers' compensation case, the employer, International Paper Company (IP), appeals from a judgment which ordered it to pay to the claimant, Blake W. Player, indemnity benefits, past and future medical benefits, attorney fees and penalties. We amend in part and, as amended, affirm.

FACTS
The claimant was employed by IP as an assistant machine operator in the Springhill plant. He worked at least 40 hours per week and received an hourly wage of $15.62. In August 2002, while working a double shift, he was pushing a roll of paper that weighed between 4,000 and 5,000 pounds at the end of his shift. Because the roll was jammed, he tried to push it. His lower back began to hurt. He did not work the next day. When he returned to *784 work the following day, the claimant reported the injury to his supervisor, Mike Crews, and was sent to see the plant nurse. The next day he returned to the nurse, telling her that he had some numbness in his right side, around his leg and ankle. He then went to see the company doctor, Dr. Law, who placed him on light duty and scheduled an MRI. On or about August 30, 2002, the assistant plant manager sent him home and told him not to return until released by his doctor. He also told the claimant that his injury was not work-related.
In September 2002, the claimant went to see Dr. Don Burt of the Joint and Bone Clinic. Dr. Burt determined that the claimant's injury was work-related and that he was unable to return to work. MRI results showed a herniated disc at L5-S1. Dr. Burt recommended surgery.
IP did not pay the claimant any indemnity benefits. Nor would it approve medical benefits, including surgical treatment.
In October 2002, the claimant filed a disputed claim for compensation with the Office of Workers' Compensation (OWC). In March 2003, the claimant moved to dismiss IP's third party administrator, Frank Gates Service Company, with prejudice; the motion was granted.
The parties agreed that if the claimant had a right to indemnity benefits, the maximum rate his average weekly wage would entitle him to was $398 per week.
In June 2003, the claimant was seen by Dr. William Whyte who was acting as IP's second opinion physician. His review of the MRI results showed "an acute disc protrusion process on top of an old degenerative disc process." One of the possible treatments he outlined in his report was surgery.
Trial was held on December 16, 2003. The claimant's personnel record and claims file were admitted in lieu of the live testimony of the persons who compiled them. The deposition of claims adjuster Polly Sweet was admitted. The claimant's medical records and deposition were also admitted into evidence, and he was the only witness to testify. The 46-year-old claimant, a high school graduate, testified that he began working for IP in October 1994. Prior to that, he worked in a plywood plant, and he built fiberglass boats for 13 years. He testified that he had had a previous back injury in 1996 while working for IP. In March 2002, he was in a car accident; he was treated for his back by Dr. Joseph Sarpy for about a month. He said that he had been under the care of Dr. Burt for about 16 months. According to Dr. Burt, the instant injury was not related to any of the claimant's prior mishaps and the claimant was unable to return to work. Dr. Burt wanted to do surgery.
On cross-examination, counsel for IP pointed out the claimant's difficulty in establishing the precise date he was injured at work. However, the claimant consistently maintained that he had properly reported his accident to his employer. He admitted that he received a settlement for his auto accident. He stated that in September 2003 he went back to IP and asked for light duty so that he could have an income. The claimant also admitted that he complained about his back hurting in July 2002 but maintained that he had no numbness at that time and that he did not require medical treatment.
In ruling, the WCJ noted that the claimant was a "poor historian" and that his testimony had many inconsistencies. However, the WCJ found that the claimant was consistent in saying that he developed a new pain after working a double shift and that it was very different from past back pain. Although he had worked at IP *785 for years with persistent back pain, the claimant had always continued to work through the pain. The WCJ also observed that IP's second opinion physician, Dr. Whyte, said that the MRI showed a new injury on top of the old disc problems. He found that the medical reports and opinions supported the claimant's version of the incident.
Based upon his review of the evidence, the WCJ found that a compensable accident occurred on or about August 11, 2002, which was timely reported to the employer. He ordered temporary total disability (TTD) benefits at a rate of $398 per week beginning September 1, 2002, and continuing until the medical evidence warranted change. The WCJ approved Dr. Burt as the claimant's choice of physician in the field of orthopedics and Dr. Marco Ramos in the field of neurosurgery. The lumbar disc surgery recommended by Dr. Burt was approved, and IP was ordered to pay Dr. Burt's bill of $2,320.90 in its entirety to the claimant.
As to penalties and attorney fees, the WCJ found that the employer did not reasonably controvert the claim and that it acted arbitrarily and capriciously in denying the claim. He assessed a penalty of $2,000 each for failure to approve recommended surgery, failure to approve Dr. Ramos, and failure to pay Dr. Burt's bill timely, or a total of $6,000. Additionally, IP was also ordered to pay a penalty of $20,000 for failure to timely pay indemnity benefits, and attorney fees of $6,500. Legal interest was ordered from the date of judicial demand. Judgment was signed April 20, 2004.
IP appealed.

WORK-RELATED ACCIDENT
IP disputes the WCJ's finding that the claimant suffered a work-related accident. Instead, IP contends that any back pain suffered by the claimant was the result of his March 2002 auto accident. Also, his records showed that he complained to the company nurse of back pain from pushing rolls as early as 1998. Due to the many contradictions in the claimant's testimony and his employment and medical records, IP asserts that the claimant failed to carry his burden of proving the occurrence of a compensable work-related accident.
The claimant contends that the record supports the WCJ's finding that a compensable injury occurred. He particularly refers to the medical reports of Dr. Burt and Dr. Whyte as supporting his position. Also, even though he had some prior back pains, he only began suffering numbness in August 2002.

Law
An employee is entitled to receive workers' compensation benefits for personal injuries from an accident arising out of and in the course of his employment. La. R.S. 23:1031(A). An accident within the context of workers' compensation is defined as an "actual, identifiable, precipitous event happening suddenly or violently ... and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." La. R.S. 23:1021(1); Thomason v. Wal-Mart Stores, Inc., 37,520 (La.App.2d Cir.9/4/03), 852 So.2d 1283, writ denied, 2003-2774 (La.12/19/03), 861 So.2d 573.
A plaintiff in a workers' compensation action has the burden of establishing a work-related accident by a preponderance of the evidence. Albert v. Trans Met, Inc., 38,261 (La.App.2d Cir.6/23/04), 877 So.2d 183; Qualls v. Stone Container Corporation, 29,794 (La.App.2d Cir.9/24/97), 699 So.2d 1137, writ denied, 1997-2929 (La.2/6/98), 709 So.2d 736; Bruno v. Harbert *786 International Inc., 593 So.2d 357 (La.1992).
Proof by a preponderance of evidence means that the fact or cause sought to be proved is more probable than not. Albert v. Trans Met, Inc., supra. He must establish a causal link between the work-related accident and his injury. Albert v. Trans Met, Inc., supra. If the evidence is evenly balanced or shows only some possibility that a work-related event produced the disability or leaves the question open to speculation or conjecture, then the plaintiff fails to carry the burden of proof. Albert v. Trans Met, Inc., supra; Qualls v. Stone Container Corporation, supra; Shelton v. Wall, 614 So.2d 828 (La.App. 2d Cir.1993).
Whether the claimant has carried his burden of proof and whether testimony is credible are questions of fact to be determined by the hearing officer. Lewis v. Chateau D'Arbonne Nurse Care Center, 38,394 (La.App.2d Cir.4/7/04), 870 So.2d 515.
Factual findings in a workers' compensation case are subject to the manifest error or clearly wrong standard of appellate review. Culotta v. A.L. & W. Moore Trucking Company, 35,344 (La.App.2d Cir.3/5/03), 839 So.2d 1063, writ denied, XXXX-XXXX (La.5/30/03), 845 So.2d 1052; Freeman v. Poulan/Weed Eater, 93-1530 (La.1/14/94), 630 So.2d 733. In applying the manifest error/clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Freeman, supra; Stobart v. State, 617 So.2d 880 (La.1993). Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. Stobart, supra. Thus, if the factfinder's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Sistler v. Liberty Mutual Insurance Company, 558 So.2d 1106 (La.1990).

Discussion
Review of the IP nurse's notes show that even on August 13, 2002, a Tuesday, the claimant plainly stated that he was in pain "since working a double Sunday night." He told the nurse that he had hurt his back a couple of years before and that his back had been hurting off and on since then.
A claimant is not disqualified from receiving benefits because he is unable to "pinpoint the precise moment of injury." Thomason v. Wal-Mart Stores, Inc., supra. Like the plaintiff in the Thomason case, the claimant in the instant case was required to perform physical labor and was accustomed to feeling some pain as a result of his work-related exertions. Admittedly, the claimant was a "poor historian," and the record contains conflicting information as to the exact date of the injury. He had also suffered back pain in the past. However, the claimant was always able to pinpoint the occurrence of this back injury in relation to working a double shift. He also indicated that this pain differed from other back pain he had suffered. Importantly, the WCJ  who had the benefit of first-hand observation of the claimant's demeanor  found him to be a credible witness worthy of belief.
Also, the medical evidence tends to corroborate the claimant's assertions. His treating orthopedic physician, Dr. Burt, concluded that the claimant's injury was work-related and that it was not related to any prior mishap. He recommended surgery. While Dr. Whyte, the physician who *787 examined the claimant for IP, was unable to say whether or not the injury was work-related, he interpreted the claimant's MRI result as showing a new injury on top of the old disc problem.
IP cites Millage v. Builder's Lumber & Supply Company, 38,635 (La.App.2d Cir.7/2/04), 877 So.2d 1171, writ denied, XXXX-XXXX (La.10/29/04), 885 So.2d 594, in support of its argument that the award of benefits should be overturned. However, review of that case reveals it is factually distinguishable. The record contradicted Millage's version of events in "nearly every respect" and his own treating chiropractor believed that his patient's pain was caused by "no specific incident."
After a careful review of the record in the instant case, we cannot find that the WCJ was manifestly erroneous in concluding that the claimant suffered a work-related injury and in awarding workers' compensation benefits to him.

EXAM BY NEUROSURGEON
IP also argues that the WCJ erred in ordering examination by a neurosurgeon. It asserts that the only evidence pertaining to this issue was a request for approval of an attorney referral to Dr. Marco Ramos. The claimant contends that he was entitled to select a neurosurgeon, and that IP never approved Dr. Ramos.
On May 8, 2003, counsel for the claimant wrote to IP to request approval of Dr. Ramos as his choice of physician in the field of neurosurgery.
La. R.S. 23:1121(B) gives an injured employee an absolute right to select one physician in any field without the approval of the employer. Smith v. Southern Holding, Inc., XXXX-XXXX (La.1/28/03), 839 So.2d 5. Selection of a new physician in a different specialty does not require such approval. Thompson v. The Animal Hospital, 39,154 (La.App.2d Cir.12/15/04), 889 So.2d 1193, 2004 WL 2889862; Davis v. Sheraton Operating Corporation, 1997-2784 (La.App. 4th Cir.5/20/98), 713 So.2d 814.
The record shows that the claimant still complained of pain, even following treatment by his own orthopedic surgeon. However, due to IP's refusal to pay for his medical treatment, the claimant was unable to have the surgical treatment recommended by Dr. Burt. He sought treatment from a neurosurgeon. We find no error in the trial court's action in allowing the claimant to select Dr. Ramos.

IMPOSITION OF PENALTIES AND ATTORNEY FEES
As previously noted, the WCJ found that the employer did not reasonably controvert the claim and that it acted arbitrarily and capriciously in denying the claim. It assessed a total of $26,000 in penalties: $20,000 for failure to timely pay indemnity benefits; $2,000 for failure to approve recommended surgery, $2,000 for failure to approve Dr. Ramos, and $2,000 for failure to pay Dr. Burt's bill timely. Attorney fees of $6,500 were also awarded. As to the $20,000 award, the WCJ opined that it could award up to $134,000 under Fontenot v. Reddell Vidrine Water District, XXXX-XXXX (La.1/14/03), 836 So.2d 14.[1]
IP contends that the WCJ's awards of penalties and attorney fees were not supported by the record. It insists that, in view of the vague, confusing and inconsistent complaints of the claimant, it was justified in questioning his claims for benefits. IP also contends that the awards *788 assessed by the WCJ were clearly excessive.
The claimant contends that the record supports the imposition of penalties and attorney fees. Even if the claimant failed to clearly identify the exact cause of his injury when he initially reported the situation, he subsequently clarified that he was hurt while pushing a roll of paper. However, the employer and its adjuster failed to consider this.

Penalties
The employer's failure to provide payment of compensation or medical benefits owed shall result in the assessment of a penalty and reasonable attorney fees, unless the employer has reasonably controverted the claim. La. R.S. 23:1201(F).[2] To reasonably controvert a claim, the employer must have sufficient factual or medical information to reasonably counter the evidence provided by claimant. Lewis v. Chateau D'Arbonne Nurse Care Center, supra; Thomason v. Wal-Mart Stores, Inc., supra.
Statutory provisions permitting the assessment of penalties and attorney fees for nonpayment of workers' compensation benefits are penal in nature and must be strictly construed. Lewis v. Chateau D'Arbonne Nurse Care Center, supra. The WCJ has great discretion in awarding or denying penalties and attorney fees. Thomason v. Wal-Mart Stores, Inc., supra. The WCJ's decision concerning whether or not to assess statutory penalties and attorney fees will not be disturbed absent an abuse of discretion. Lewis v. Chateau D'Arbonne Nurse Care Center, supra.
The provisions of La. R.S. 23:1201(F) provides for multiple penalties for multiple violations of compensation and medical benefits. Fontenot v. Reddell Vidrine Water District, supra. See Rivera v. M & R Cable Contractors, Inc., 2004-985 (La.App. 3d Cir.12/15/04), 2004 WL 2913749.
Polly Sweet, the insurance adjustor, testified that the claimant's claim was denied because he did not report an accident and he had prior injuries. However, she agreed that he reported a work-related injury on August 26, 2002 at the Springhill Medical Center and later specified *789 to Dr. Whyte that he was hurt pushing a large roll of paper. Also, Dr. Burt opined that the injury was work-related. Despite this evidence, the employer clung to its initial refusal based upon the shortcomings of the information provided by this claimant. The employer, which lacked "sufficient factual or medical information to reasonably counter the evidence provided by claimant," cannot be said to have reasonably controverted the claimant's claims for workers' compensation or medical benefits. Although the Fontenot case allows the imposition of multiple penalties for multiple violations of workers' compensation benefits, we do not believe that it allows penalties for each and every week of missed benefits, as indicated by the WCJ. Instead, Fontenot allows penalties for each claim or "demand for particular benefits."[3] The statute in effect at the time these benefits were withheld allowed a penalty of 12 percent of the unpaid compensation or $50 per calendar day, whichever was greater, with a maximum of $2,000 for the per day penalties.[4] By our calculations, the amount of benefits due at trial was $26,666 ($398 per week X 67 weeks); 12 percent of this amount is $3,200. Consequently, we lower the penalties for failure to timely pay compensation benefits from $20,000 to $3,200.

Attorney Fees
The factors to be considered in the imposition of the attorney fee in workers' compensation cases include the degree of skill and ability exercised by the attorney, the amount of the claim, the amount recovered for the claimant, and the amount of time the attorney devoted to the case. Lewis v. Chateau D'Arbonne Nurse Care Center, supra. There is no requirement that the trial court hear evidence concerning the time spent or the hourly rates charged to make an award of attorney fees since the record will reflect much of the services rendered. Tatum v. St. Patrick's Psychiatric Hospital, 34,957 (La.App.2d Cir.8/22/01), 794 So.2d 958. The degree of bad faith exhibited by the employer is not an appropriate factor in determining the amount of attorney fees to be awarded. Thompson v. The Animal Hospital, supra.
Counsel for the claimant represented his client well, securing the payment of workers' compensation benefits owed and not paid for more than a year. He also obtained payment of Dr. Burt's bill, approval of the surgery recommended by Dr. Burt, and approval of Dr. Ramos as the claimant's neurosurgeon. According to the attorney's affidavit, 32 attorney hours and 11.9 staff hours were expended on this case, which involved the review of the claimant's extensive medical and personnel records. This time did not include the attorney's time in court for trial. While perhaps on the generous side, the award of $6,500 in attorney fees is reasonable and not excessive.

ANSWER TO APPEAL
The claimant answered the appeal, seeking additional attorney fees of $2,500 for responding to IP's appeal. Considering the amount of time expended on appeal, the reduction of penalties on appeal, and the generosity of the prior award of attorney fees, we find that an award of $500 will adequately compensate the claimant's counsel for the work performed on this appeal.

*790 CONCLUSION
The judgment of the workers' compensation judge is amended to lower the award of penalties for compensation benefits from $20,000 to $3,200. As amended, the judgment is affirmed. Additional attorney fees of $500 are awarded on appeal. Costs are assessed against the appellant.
AMENDED AND, AS AMENDED, AFFIRMED.
NOTES
[1] This figure reflects imposition of a $2,000 penalty for each of the 67 weeks of weekly benefits which the employer failed to pay prior to trial.
[2] Prior to its 2003 amendment, La. R.S. 23:1201 stated, in relevant part:

F. Failure to provide payment in accordance with this Section shall result in the assessment of a penalty in an amount equal to twelve percent of any unpaid compensation or medical benefits or fifty dollars per calendar day, whichever is greater, for each day in which any and all compensation or medical benefits remain unpaid, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim....
(2) This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control. [Emphasis added.]
After the Fontenot case was rendered in January 2003, this provision was amended to include: "The maximum amount of penalties which may be imposed at a hearing on the merits regardless of the number of penalties which might be imposed under this Section is eight thousand dollars." The provisions in effect at the time of the withholding of benefits control the award of penalties and attorney fees. Gay v. Georgia Pacific Corporation, 32,653 (La.App.2d Cir.12/22/99), 754 So.2d 1101; Harvey v. BE & K Const. Co., 34,057 (La.App.2d Cir.11/15/00), 772 So.2d 949, writ denied, XXXX-XXXX (La.3/9/01), 786 So.2d 732; Rivera v. M & R Cable Contractors, Inc., infra. However, see and compare Lewis v. Chateau D'Arbonne Nurse Care Center, supra, footnote 1. The claimant was injured in August 2002 and the employer refused to pay benefits and medical expenses from that point forward. We find that the 2003 amendment, effective August 15, 2003, is not applicable to the present case.
[3] Also, see and compare footnote 12 in the Fontenot case.
[4] Now La. R.S. 23:1201(F) limits total penalties to $8,000. However, at the relevant time in our case, there was no maximum penalty.