907 So.2d 213 (2005)
Barbara GRAHAM, Plaintiff-Appellant
v.
McKinney NISSAN, Defendant-Appellee.
No. 39,656-WCA.
Court of Appeal of Louisiana, Second Circuit.
June 29, 2005.
*215 Barbara Graham, In Proper Person.
Hurlburt, Privat & Monrose, P.L.C., by M. Blake Monrose, Shannon Seiler Dartez, Lafayette, for Appellee.
Before WILLIAMS, GASKINS and PEATROSS, JJ.
GASKINS, J.
In this workers' compensation case, the claimant, Barbara Graham, contends that she was stung by an insect in the course and scope of her employment as a car salesperson. She appealed the ruling of the worker's compensation judge (WCJ) which denied her claim for benefits, penalties, and attorney fees. Her former employer answered the appeal, complaining of the WCJ's decision to not penalize the claimant for willful misrepresentations. We affirm in part, reverse in part and remand.

FACTS
On September 1, 2001, the claimant was working for McKinney Nissan in Bossier City. She got up from her desk, began to walk, and suddenly collapsed. She was taken to the hospital by ambulance. She was diagnosed with a syncopal episode with a possible seizure. She reported a history of diabetes, as well as suffering diarrhea and nausea after lunch. That same day, she told Dr. John Horan that she did not recall what happened. The next day, she told Dr. Gurleen Sikand that she was sitting at her desk and could not hear anything. Unable to speak, she wrote "diabetic" on her hand and walked to a co-worker. She remembered nothing after that. On September 3, 2001, while *216 still in the hospital, she saw Dr. William Eaves and told him she recalled having sharp chest pains. On September 5, 2001, she told Dr. Allen Cox she recalled seeing a wasp near her desk and feeling a sharp sting on her thigh. Dr. Cox observed a small welt with a small dark center on her leg. Dr. William Washburn, an allergy specialist, consulted but was unable to positively confirm a reaction to an insect sting. She was discharged from the hospital on September 7, 2001. On September 24, 2001, she saw Dr. Cox in his office. He removed what appeared to be a stinger from her right thigh.
The claimant filed a claim with the Office of Workers' Compensation on February 8, 2002. She asserted that she was entitled to benefits because she was stung by a wasp or bee and went into anaphylactic shock while closing a deal on a car. She contended that she injured her neck, back and head when she fell to the floor. In a supplemental petition, she stated that medical expenses associated with her work-related injuries had not been paid by her employer and that the employer had not authorized medical treatments. According to the claimant, the employer was arbitrarily and capriciously denying her benefits; she requested penalties and attorney fees.
Due to the claimant's failure to attend a mediation, her claim was dismissed on September 25, 2002. It was reinstated on November 18, 2002.
In an answer filed in January 2003, the employer raised the affirmative defense of misrepresentations concerning benefits under La. R.S. 23:1208.
The matter was tried on June 3, 2004. The WCJ noted in his oral reasons for judgment that he had "a lot of problems with credibility of Ms. Graham." The WCJ did not believe that the claimant was "stung by anything" and found that the evidence presented did not demonstrate why she collapsed. The WCJ concluded that the claimant did not sustain an accident within the course and scope of her employment and that she was not entitled to workers' compensation benefits. The claimant's request for penalties and attorney fees was denied because the employer reasonably controverted her claims.
Concluding that the claimant was "confused," the WCJ declined to hold that she had committed fraud, stating that he was going to give her "a break." Finding a lack of "willful intent" on the claimant's part, he therefore concluded that she had not violated La. R.S. 23:1208.
Judgment was signed on June 22, 2004.

CLAIMANT'S "ASSIGNMENTS"
The claimant appeals in proper person. She lists nine "assignments of error." They are: (1) the WCJ misstated her middle name as "June" instead of "Jan"; (2) the employer did not show that liquid was not poured down her throat causing her to have a seizure while she was unconscious; (3) the WCJ had "health problems" that "could have caused manifest error"; (4) the WCJ allowed fellow employee Retta Blanton's statement to paramedics about foam and liquid on the claimant's face; (5) the WCJ "committed manifest error in that [the claimant] had not known that a workmans compensation [sic] case can be filed anywhere but a workmans compensation court [sic]"; (6) the WCJ erred in its findings of fact; (7) the WCJ allowed "fraudulent papers" to be introduced; (8) the WCJ erred in not awarding hospital and medical bills, court costs, and "all awards due"; and (9) the WCJ erred because the claimant lost her house and her physical and emotional well being.
*217 The employer argues that since none of the claimant's assignments were argued in brief, they should all be deemed abandoned. Assignments of error neither briefed nor argued in brief are deemed abandoned. URCA 2-12.4. Knotts v. Snelling Temporaries, 27,773 (La.App. 2d Cir.12/6/95), 665 So.2d 657; Brown v. Ruskin Mfg. Co., 33,015 (La.App. 2d Cir.4/5/00), 756 So.2d 667. At best, most of the claimant's "assignments" are only one-sentence complaints, and it is not even possible to discern the basis of some of them. However, in the interest of justice, we will construe the pro se claimant's "assignments" as presenting a single assignment of error challenging the WCJ's ruling that the claimant was not entitled to receive benefits.

ENTITLEMENT TO BENEFITS

Law
A plaintiff in a workers' compensation action has the burden of establishing a work-related accident by a preponderance of the evidence. Player v. International Paper Co., 39,254 (La.App. 2d Cir.1/28/05), 892 So.2d 781. If the evidence is evenly balanced or shows only some possibility that a work-related event produced the disability or leaves the question open to speculation or conjecture, then the plaintiff fails to carry the burden of proof. Player, supra. Whether the claimant has carried her burden of proof and whether testimony is credible are questions of fact to be determined by the hearing officer. Lewis v. Chateau D'Arbonne Nurse Care Center, 38,394 (La.App. 2d Cir.4/7/04), 870 So.2d 515.
Factual findings in a workers' compensation case are subject to the manifest error or clearly wrong standard of appellate review. Culotta v. A.L. & W. Moore Trucking Company, 35,344 (La.App. 2d Cir.3/5/03), 839 So.2d 1063, writ denied, XXXX-XXXX (La.5/30/03), 845 So.2d 1052.
When there is a conflict of testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed even though the appellate court may feel its own inferences and evaluations are reasonable. Rosell v. ESCO, 549 So.2d 840 (La.1989).
The WCJ is afforded considerable discretion in evaluating expert testimony, and the decision to accept the testimony of one expert over the conflicting testimony of another can virtually never be manifestly erroneous. Kidd v. Brown Radiator & Frame, 38,729 (La.App. 2d Cir.12/22/04), 890 So.2d 796, writ denied, XXXX-XXXX (La.3/24/05), 896 So.2d 1042.
Insect bites or stings are compensable as "accidents" under the workers' compensation law. Oalmann v. Brock and Blevins Co., Inc., 428 So.2d 892 (La.App. 1st Cir.1983).

Discussion
The claimant contends that the WCJ committed manifest error by failing to find that she suffered a work-related accident and that she was entitled to receive workers' compensation benefits. The employer argues that the record does not demonstrate that she actually sustained an insect bite at work, much less that her collapse was in any way connected to her employment. The claimant was hospitalized from September 1-7, 2001. There is no mention of a possible insect sting during the first four days of her hospitalization.
The claimant testified that she did not recall seeing any insect or feeling a sting prior to her collapse. She stated that she first claimed to her employer that she was *218 stung by an insect after she returned to work and another salesman showed her part of an insect's nest in a vehicle near her desk. She also testified that she first learned she had been stung when Dr. Cox told her that something had bitten her. However, on cross-examination, she admitted that she was the one who told him that she had been stung. The medical records demonstrate that on September 5, 2001, she told Dr. Cox she recalled seeing a wasp floating around her desk and then feeling a sharp sting on her thigh. When confronted with this information, the claimant insisted that the September 5 date must be wrong. She also asserted that the doctors did not examine her leg while she was in the hospital. Yet Dr. Cox noted a red welt on her thigh in her hospital records.
During her visit to Dr. Cox on September 24, 2001, the claimant displayed subjective complaints of pain in her neck and back but no objective findings. A possible stinger was removed from her right thigh; however, the object was never examined under a microscope to confirm this possibility. The immunologist to whom Dr. Cox referred the claimant said that it was possible that she had an insect sting reaction but he could not conclusively make that diagnosis. Dr. Cox testified that the claimant had been diagnosed with diabetes, but it was controlled with diet.
Dr. Manuel Lopez, the employer's expert immunologist, reviewed the claimant's medical records and Dr. Cox's deposition. He testified that the symptoms reported by the claimant's co-worker and the emergency room staff did not indicate that she suffered any anaphylactic reaction. He also stated that if a wasp had stung the claimant as she claimed, it would not have left a stinger behind.
The WCJ expressed great concern with the claimant's credibility. A review of the entire record, including the claimant's past employment history, reveals that his reservations were well-founded.
The claimant had worked for several car dealerships. She was hired by Wray Ford on February 28, 2001; she was terminated on May 11, 2001 for insubordination. According to her employment records, she caused a disturbance in the showroom and argued with the sales manager in front of customers. The records further indicate that the employee who trained her advised against hiring her because of her inability to follow instructions and noted her repeated threats to sue the company. The file documentation demonstrated that during her employment she was unwilling to follow basic regulations and rules and that her response to criticism or reprimand was to either ignore the directive or threaten legal action.
On May 19, 2001, she was hired at Champion Ford; she resigned on May 25, 2001.
She worked for Mike Morgan Pontiac GMC from July 20, 2001 to August 17, 2001. During that brief period, she suffered ant bites. Also, on August 11, 2001, she damaged two new vehicles when she was moving a car; she asserted that having to move a car in the heat caused her to be weak and have a blinding headache. She claimed upper shoulder and neck pain as a result of this accident. Pursuant to her complaints of ant bites and cervical strain, the employer sent her to Occupational Medical Clinic; she was released to return to work on August 16, 2001, without limitations. She failed to return to work; instead she resigned on August 17, 2001, because the working conditions were "unbearable." (However, in her letter of resignation, she indicated that she would like to return someday if conditions improved.)
*219 She then went to work for McKinney Nissan on August 17, 2001; she was laid off on or about September 15, 2001. The instant action arose as a result of her collapse at McKinney Nissan on September 1, 2001.
On October 9, 2001, the claimant successfully applied to receive unemployment benefits. She certified on her application for these benefits that there was no reason such as illness or disability preventing her from accepting work immediately. She testified that she did not know that the employer was entitled to an offset for every week she was paid unemployment benefits if she applied for both unemployment benefits and workers' compensation benefits.
She was employed by Nehls Chevrolet in Marshall, Texas, in July 2002. However, she was unable to do the job because of her inability to understand directions. She testified that while she was there she was stung in the arm by something on the car lot. She received an anti-venom injection and suffered no ill effects.[1]
The claimant testified that she had never filed a workers' compensation claim prior to the present one. On cross-examination, it was revealed that she had, in fact, filed several while a casino employee.
After a careful review of the record, we find that the WCJ's findings of fact  which are based in part on his determination that the claimant lacked credibility  are reasonable. Among other things, the claimant attempted to portray herself as inexperienced in legal or workers' compensation matters; the evidence revealed otherwise. The WCJ accepted the testimony of the employer's expert witness that the claimant's symptoms were not indicative of anaphylactic shock. Like the WCJ, we are unable to determine what exactly caused the claimant to collapse. However, we find no manifest error in the WCJ's determination that the claimant failed to prove that she sustained a work-related accident.

ANSWER TO APPEAL
In its answer to the appeal, the employer contends that the WCJ erred in failing to find that La. R.S. 23:1208 was applicable because the claimant made misrepresentations in order to obtain benefits. Given the many inconsistencies in the claimant's statements to her various doctors and the contradictions in her testimony, the employer asks for reimbursement of the costs and all workers' compensation benefits paid to or on behalf of the claimant, as well as the costs associated with the appeal.

Law
La. R.S. 23:1208 provides, in relevant part:
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
...
D. In addition to the criminal penalties provided for in Subsection C of this Section, any person violating the provisions of this Section may be assessed civil penalties by the workers' compensation judge of not less than five hundred *220 dollars nor more than five thousand dollars, and may be ordered to make restitution. Restitution may only be ordered for benefits claimed or payments obtained through fraud and only up to the time the employer became aware of the fraudulent conduct.
E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.
This statute authorizes forfeiture of benefits upon proof that (1) there is a false statement or representation; (2) it is willfully made; and (3) it is made for the purpose of obtaining or defeating any benefit or payment. The statute applies to any false statement or misrepresentation made willfully by a claimant for the purpose of obtaining benefits. All of these requirements must be present before a claimant can be penalized. Freeman v. Triad Builders, 39,657 (La.App. 2d Cir.5/11/05), 2005 WL 1109582. Because statutory forfeiture of workers' compensation benefits for willfully making false statement for the purpose of obtaining benefits is a harsh remedy, it must be strictly construed. Risk Management Services v. Ashley, 38,431 (La.App. 2d Cir.5/14/04), 873 So.2d 942, writ denied, XXXX-XXXX (La.9/24/04), 882 So.2d 1138.
The relationship between the false statement and the pending claim will be probative in determining whether the statement was made willfully for the purpose of obtaining benefits. An inadvertent and inconsequential false statement would not result in the forfeiture of benefits. Jim Walter Homes, Inc. v. Prine, XXXX-XXXX (La.App. 1st Cir.2/15/02), 808 So.2d 818; Rosson v. Rust Constructors, Inc., 32,789 (La.App. 2d Cir.3/1/00), 754 So.2d 324, writ denied, XXXX-XXXX (La.5/26/00), 762 So.2d 1105.
Determinations of misrepresentations for forfeiture of benefits under La. R.S. 23:1208 are governed by the manifest error/clearly wrong standard of review. Freeman v. Triad Builders, supra. Under this standard, if the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that, had it been sitting as the trier of fact, it would have weighed the evidence differently. Stobart v. State through Dept. of Transp. & Development, 617 So.2d 880 (La.1993).

Discussion
In his oral ruling, the WCJ noted the claimant's conflicting testimony about when she decided she had suffered an insect bite  while in the hospital, when she returned to work, or when she saw Dr. Cox the first time after her hospitalization. The WCJ stated: "If I didn't think you were confused, I would find [1208]." He then observed that the claimant was asked by her own attorney several times if she had ever filed a workers' compensation claim before and she denied it every time. However, on cross-examination, it was revealed that she had filed several. The WCJ was "firmly convinced" that the claimant knew that those were workers' compensation claims. However, he chose to "give [her] a break" and declined to find a violation under La. R.S. 23:1208.
A review of the claimant's testimony reveals many questionable statements. Most blatantly, she attempted to dismiss the possibility that her collapse was a diabetic reaction by claiming that "all [her] doctors" were now saying that she is not diabetic. However, her medical and employment records are replete with references to her diabetes. Her own physician, Dr. Cox, testified that she is diabetic but she requires no treatment for the condition.[2] *221 She also claimed that she since her collapse, she has suffered confusion which prevents her from maintaining employment; however, her employment records from Wray Ford and Hollywood Casino indicate that she had difficulties following directions prior to this incident. She stated that she couldn't recall seeing a doctor for the ant bites and the alleged injuries she suffered when she damaged the cars at Morgan Pontiac; when shown documentation that she was seen at the Occupational Medicine Clinic, she acknowledged her signature and then stated that she asked to be sent to the doctor. She was also confronted with her failure to tell Dr. Cox when she sought treatment for headaches, neck and back pain from her fall at McKinney Nissan that she had been to the Occupational Medicine Clinic about two weeks before with the same complaints arising from the Morgan Pontiac incident.
The WCJ gave the claimant "a break" by declining to find a 1208 violation. However, the record does not support the WCJ's generosity to this claimant as being reasonable. Review of the entire record demonstrates that she repeatedly gave testimony that was proven false on a myriad of matters, including the existence of her diabetes. These statements bore directly on the issue of determining whether the claimant sustained a work-related injury, and her misstatements were made to obtain workers' compensation benefits. They do not demonstrate mere confusion on the claimant's part. Nor can they be dismissed as inadvertent and inconsequential.
Finding that the WCJ committed manifest error on this issue, we reverse the portion of the judgment holding that La. R.S. 23:1208 was not violated. The matter is remanded for further proceedings on this issue.

CONCLUSION
The portion of the judgment finding that the claimant was not entitled to workers' compensation benefits is affirmed. The portion finding no violation of La. R.S. 23:1208 is reversed, and we remand for further proceedings on this matter.
Costs of this appeal are assessed against the claimant.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
NOTES
[1] The claimant's employment records from Nehls Chevrolet include her job application; interestingly, the reasons she gave on this form for the termination of some of her prior employments differed from the other evidence in this record. Most notably, instead of revealing that she was fired from Wray Ford for insubordination, she asserted in the paperwork for her application that she left that job because, as the last hired, she was the first to go when business was slow.
[2] The medical records of Dr. Cox and the claimant's testimony reveal that, at the claimant's request, Dr. Cox had even written a letter in 2000 to the effect that she had diabetes and several other maladies which might affect her school work.