STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

WCA 05-744


DAVID D. REED

VERSUS

WILLIS ABSHIRE


**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 3
PARISH OF CALCASIEU, NO. 03-06429
CHARLOTTE L. BUSHNELL, WORKERS' COMPENSATION JUDGE

**********

BILLY HOWARD EZELL
JUDGE

**********

Court composed of Marc T. Amy, Michael G. Sullivan, and Billy Howard Ezell, Judges.


REVERSED IN PART AND RENDERED.


Robert Thomas Jacques, Jr.
Attorney at Law
P. O. Box 1883
Lake Charles, LA 70602
(337) 433-4674
Counsel for Plaintiff/Appellant
David D. Reed

**Christopher Richard Philipp**
**Attorney at Law**
**P. O. Box 2369**
**Lafayette, LA 70502-2369**
**(337) 235-9478**
**Counsel for Defendant/Appellee**
**Willis Abshire**

**EZELL, JUDGE**.

The sole issue in this workers' compensation appeal concerns the failure of the workers' compensation judge to award penalties and attorneys fees because approval to see a pain management specialist was not timely. We agree and award penalties and attorney fees.

## FACTS

David Reed was working for Willis Abshire Painting, L.L.C., on January 14, 2003, when he was injured in the course and scope of his employment. At the time of the accident, Reed was on stilts and was preparing some exterior brick for paint when he fell. Reed injured his right knee during the fall.

Reed initially went to Christus St. Patrick Hospital and was eventually referred to Dr. Daniel Yanicko, an orthopedic surgeon, who saw Reed on January 22, 2003. An MRI of Reed's right knee revealed a vertical tear in the posterior horn of the lateral meniscus, possibly requiring surgery.

Thereafter, Reed advised Maggie Blanchard that he wanted to see Dr. Dale Bernauer. Blanchard works for Risk Management Services who is the third-party administrator for Louisiana United Business Association, Self-Insurer's Fund (LUBA). Although Dr. Bernauer is an orthopedist, he does not perform surgery, so Reed saw Dr. Bernauer's partner, Dr. Stephen Flood.

Dr. Flood first saw Reed on March 25, 2003. He initially started Reed with physical therapy. The physical therapy was not successful, so right knee arthroscopy was performed on June 16, 2003. After surgery, Dr. Flood continued following Reed. Over the next few months, Reed continued to complain of pain. On October 31, 2003, Dr. Flood began to administer Hyalgan injections. Dr. Flood's notes indicate that Reed had relief from the first two injections.

1

Prior to receiving the injections, Reed had made a request to Blanchard, on September 3, 2003, to see Dr. Frank Lopez, a pain management physician. Blanchard informed Reed that he would need a letter of representation and a doctor referral to see Dr. Lopez. On October 13, 2003, Blanchard received a letter of request from Reed's attorney to see Dr. Lopez.

On November 20, 2003, Reed's attorney called Dr. Flood's office requesting a referral to Dr. Lopez for pain management. Dr. Flood agreed and issued a physician referral form. However, Blanchard still refused to let Reed see Dr. Lopez because she decided that she needed a second medical opinion. Blanchard requested that Reed see Dr. Thomas Ford, another orthopedic surgeon, but Reed refused.

Meanwhile, on September 5, 2003, Reed filed a disputed claim for compensation concerning his choice of Dr. Lopez as a specialist in rehabilitation and pain. He also sought penalties and attorney fees. Abshire filed a motion to compel a medical examination by Dr. Ford prior to authorizing treatment for pain management, questioning whether pain management was reasonable and necessary.

Following Reed's request for an expedited hearing, a hearing was held on January 7, 2004, in which the workers' compensation judge (WCJ) ruled that Reed was entitled to be seen by Dr. Lopez as a referral from Dr. Flood. It was also ordered that Reed appear for an evaluation with Dr. Ford. The issue of penalties and attorneys fees was reserved for the trial on the merits.

Subsequently, Reed filed a second motion for expedited hearing on February 11, 2004, because Abshire only authorized an evaluation with Dr. Lopez. A hearing was held on February 12, at which time the WCJ ruled that Reed was entitled to select Dr. Lopez as his treating physician in the field of pain management. The issue of penalties and attorney fees was once again deferred until the trial on the merits.

Trial was held on September 8, 2004. Among other rulings, the WCJ held that Abshire reasonably controverted the manner in which the referral to Dr. Lopez was handled, thereby declining to award penalties and attorney fees. It is from this ruling that Reed appeals.

**PENALTIES AND ATTORNEY FEES**

Reed contends that the WCJ committed manifest error in ruling that penalties and attorney fees were not appropriate in this case. Reed argues that he has a right to a choice of a treating physician in a different field of specialty pursuant to La.R.S. 23:1121 and a referral from another doctor is not needed.

Reed made clear his desire to see Dr. Lopez as a pain management specialist. However, Risk Management Services, on behalf of Abshire, wanted a referral from a doctor to insure that the treatment was necessary. Dr. Flood's records indicate that Reed continued to experience pain in his right knee. Dr. Flood even tried Hyalgan injections, which did provide some relief but did not alleviate the pain. While it is true that Reed's attorney requested that Dr. Flood refer Reed to Dr. Lopez, Dr. Flood did so and there is no indication that Dr. Flood thought that it was not necessary treatment. We assume that Dr. Flood would not have referred a patient for unnecessary treatment. Furthermore, this referral was based on the requirement of Risk Management Services that Reed have a doctor referral before it would authorize payment of Dr. Lopez's bills. Even after Risk Management Services received the requested referral from Dr. Flood on November 23, 2003, it refused to pay for treatment by Dr. Lopez until ordered by the court to do so on February 17, 2004, almost three months later.

We find that once Dr. Flood referred Reed to Dr. Lopez for pain management treatment, the situation then became one of failure to authorize treatment as opposed

3

to a choice of physician issue. *Latigue v. Christus St. Patrick Hosp.*, 03-871 (La.App. 3 Cir. 12/17/03), 861 So.2d 898, *writ denied*, 04-193 (La. 3/26/04), 871 So.2d 349. At that juncture, La.R.S. 23:1201 and 23:1203 became applicable to the case. *Id.* This court, relying on *Authement v. Shappert Eng'g*, 02-1631 (La. 2/25/03), 840 So.2d 1181, held that failure to authorize treatment is a failure to furnish compensation benefits warranting the imposition of penalties and attorney fees except when the claim is reasonably controverted. *Id.*

The WCJ found that Risk Management Services reasonably controverted the claim. In reasons for judgment she specifically ruled that "failure to authorize an appointment with Dr. Lopez within a period of time between November 24, 2003 and January 7, 2004 was prompt and reasonable." We are mindful that a WCJ's findings of fact are subject to the manifest error/ clearly wrong standard of review and the determination of whether an employer or insurer should be cast with penalties and attorney fees in a workers' compensation case is essentially a question of fact. *Authement*, 840 So.2d 1181.

The Louisiana Supreme Court discussed the meaning of "reasonably controverting a claim" in *Brown v. Texas-LA Cartage, Inc.*, 98-1063, p. 9 (La. 12/1/98), 721 So.2d 885, 890, as follows:

> In general, one can surmise from the plain meaning of the words making up the phrase "reasonably controvert" that in order to reasonably controvert a claim, the defendant must have some valid reason or evidence upon which to base his denial of benefits. Thus, to determine whether the claimant's right has been reasonably controverted, thereby precluding the imposition of penalties and attorney fees under La. R.S. 23:1201, a court must ascertain whether the employer or his insurer engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed.

4

There is no evidence in the record that Risk Management Services reasonably controverted the referral by Dr. Flood other than the fact that it wanted a second opinion. Prior to that time, all evidence indicated that Reed continued to suffer with pain and Dr. Flood had referred Reed to Dr. Lopez. In January 2004, when Dr. Ford examined Reed, he concluded that Reed was still not able to return to work. Dr. Ford noted that Reed had pain in his knee and also reviewed an October 2003 MRI which indicated persistent pathology in the lateral meniscus and even recommended that the area be evaluated arthroscopically to see if there was a re-tear. He did state that pain management would not allow Reed to return to his pre-injury activity of painting which required him to occasionally walk on stilts. However, Dr. Ford did not offer an opinion as to whether pain management would help with Reed's pain problems.

Even with Dr. Ford's agreement that Reed continues to have problems and the fact that Reed's treating physician, Dr. Flood, referred Reed to Dr. Lopez, Risk Management Services still refused to authorize treatment with Dr. Lopez until ordered to do so by the WCJ in February. We find that the WCJ committed manifest error in finding that Risk Management reasonably controverted this claim during this three-month period.

Louisiana Revised Statutes 23:1201(F)[1] provides for the:

> assessment of a penalty in an amount up to the greater of twelve percent
> of any unpaid . . . medical benefits, or fifty dollars per calendar day for
> each day in which any and all compensation or medical benefits remain
> unpaid . . ., together with reasonable attorney fees for each disputed
> claim; however, the fifty dollars per calendar day penalty shall not

---

[1] Louisiana Revised Statutes 23:1201 was amended by Acts 2003, No. 1204, § 1, which among other changes, rewrote the introductory paragraph of subsection F. Although Reed was injured prior to the effective date of these amendments, we note that the law in effect at the time that Reed was denied his request to see Dr. Lopez is the law that governs. *Rivera v. M & R. Cable Contrs., Inc.*, 04-985 (La.App. 3 Cir. 12/14/04), 896 So.2d 90; *see also Frith v. Riverwood, Inc.* 04-1086 (La. 1/19/05), 892 So.2d 7. *Skipper v. Acadian Oaks Hosp.*, 00-67 (La.App. 3 Cir. 5/3/00), 762 So.2d 122;

exceed a maximum of two thousand dollars in the aggregate for any claim.

Risk Management refused to authorize treatment by Dr. Lopez for more than forty days, therefore, Reed is entitled to the maximum penalty of $2,000. We further find that Reed is entitled to attorney fees in the amount of $7,500, for work performed at the trial and appellate levels. Reed's attorney made several attempts to initially secure treatment by Dr. Lopez in addition to attending two separate hearings on the matter. He further had to appeal the matter to this court and was successful.

For these reasons we reverse the denial of penalties and attorney fees for the failure to authorize treatment with Dr. Lopez. We award David Reed $2,000 in penalties and $7,500 in attorney fees. Costs of this appeal are assessed to Willis Abshire.

**REVERSED IN PART AND RENDERED**.