STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

04-1191

KIM BIGGE

VERSUS

THE LEMOINE COMPANY

**********
APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 4
PARISH OF LAFAYETTE, NO. 02-06524
HON. SAM L. LOWERY, WORKERS' COMPENSATION JUDGE
**********

GLENN B. GREMILLION
JUDGE

**********

Court composed of Michael G. Sullivan, Glenn B. Gremillion, and J. David Painter, Judges.

AFFIRMED.

Craig A. Davis
111 Mercury Street
Lafayette, LA 70503
(337) 231-5351
Counsel for Plaintiff/Appellee
    Kim Bigge

Debra Talbot Parker
Johnson, Stiltner & Rahman
P. O. Box 98001
Baton Rouge, LA 70898-8001
(225) 930-0437
Counsel for Defendant/Appellant
    The Lemoine Company

GREMILLION, Judge.

The defendant, The Lemoine Company (TLC), appeals the judgment of the workers' compensation judge finding that the plaintiff, Kim Bigge, suffered a work-related accident and that he was entitled to see a physician of his own choice. For the following reasons, we affirm.

## FACTS

Bigge, a drywall mechanic, allegedly suffered an injury to his lower back on August 8, 2002, while moving boxes of documents from TLC's former office to its new office. The boxes, which were located in the second floor of a warehouse, were slid down to the first floor via doors nailed onto the stairs. Bigge, who was located at the bottom of the stairs, stopped the boxes as they reached the bottom and then handed them to another employee to be stacked onto a trailer. When stopping an especially heavy box, he claimed that he felt a pain in his back as the box hit his hands, causing him to immediately fall to the floor. He was taken to a doctor and given an injection for his back. He returned to the doctor two other times seeking treatment for back pain. Bigge returned to work on August 23, 2002, but was only able to work a few hours because of discomfort in his back. As he was unable to perform his job duties, he was terminated from his employment later that morning. Thereafter, he obtained counsel and requested that he be allowed to see a physician of his choice. This request was denied by the Louisiana Workers' Compensation Company (LWCC), TLC's workers' compensation insurance carrier, as it had already determined his claim was noncompensable.

1

Thereafter, Bigge filed a disputed claim for compensation seeking indemnity and medical benefits, the right to see a physician of his choice, and penalties and attorney's fees. TLC denied his claim alleging that he had forfeited his right to workers' compensation benefits via his violations of La.R.S. 23:1208 and 1208.1. After a trial on the merits, the workers' compensation judge held that Bigge had sustained a work-related accident, was entitled to see a physician of his choice, was entitled to indemnity benefits from October 2002, when he returned to work, and awarded him penalties of $4000 and attorney's fees of $6000. Upon the denial of its motion for new trial, TLC suspensively appealed from this judgment.

## ISSUES

On appeal, TLC raises six assignments of error. It argues that the workers' compensation judge erred in finding that Bigge satisfied his burden of proving that he suffered a work-related injury and in failing to address its claims that he violated La.R.S. 23:1208 and 23:1208.1. It further argues that the workers' compensation judge erred in finding that Bigge was entitled to see a physician of his choice, in awarding him indemnity benefits, and in assessing it with penalties and attorney's fees.

## WORK-RELATED ACCIDENT
## MISREPRESENTATIONS

In its first two assignments of error, TLC argues that the workers' compensation judge erred in finding that Bigge suffered a work-related accident and in failing to address its allegations that he violated La.R.S. 23:1208 and 1208.1.

In order to recover workers' compensation benefits, an injured employee must prove by a preponderance of the evidence that he suffered a "personal injury

2

by accident arising out of and in the course of his employment." La.R.S. 23:1031(A). An "accident" is defined as an "unexpected or unforseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." La.R.S. 23:1021(1).

The Louisiana Supreme Court, in *Bruno v. Harbert International Inc.*, 593 So.2d 357, 361 (La.1992), expounded on what proof will satisfy an employee's burden in proving a work-related injury:

> A worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. *West v. Bayou Vista Manor, Inc.*, 371 So.2d 1146 (La.1979); Malone and Johnson, *13 Louisiana Civil Law Treatise, Workers' Compensation*, § 253 (2d Ed.1980). Corroboration of the worker's testimony may be provided by the testimony of fellow workers, spouses or friends. Malone & Johnson, *supra*; *Nelson v. [Roadway Express, Inc.*, 588 So.2d 350 (La.1991)]. Corroboration may also be provided by medical evidence. *West, supra*.

> In determining whether the worker has discharged his or her burden of proof, the trial court should accept as true a witness's uncontradicted testimony, although the witness is a party, absent "circumstances casting suspicion on the reliability of this testimony." *West*, 371 So.2d at 1147; *Holiday v. Borden Chemical*, 508 So.2d 1381, 1383 (La.1987). The trial court's determinations as to whether the worker's testimony is credible and whether the worker has discharged his or her burden of proof are factual determinations not to be disturbed on review unless clearly wrong or absent a showing of manifest error. *Gonzales v. Babco Farms*, Inc., 535 So.2d 822, 824 (La.App. 2d Cir.), *writ denied*, 536 So.2d 1200 (La.1988) (collecting cases).

As stated in *Rosell v. ESCO*, 549 So.2d 840, 844-45 (La.1989) (citations omitted):

> When findings are based on determinations regarding the credibility of witnesses, the manifest error—clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice

that bear so heavily on the listener's understanding and belief in what is said. Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.

Louisiana Revised Statute 23:1208(A) provides, "It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation." Thus, in order for an employer to prove forfeiture pursuant to La.R.S. 23:1208, it must prove that a false representation was willfully made by the employee for the purpose of obtaining compensation benefits. *Resweber v. Haroil Constr. Co.*, 94-2708, 94-3138 (La. 9/5/95), 660 So.2d 7. An inadvertent or inconsequential false statement will not result in the forfeiture of benefits. *Jim Walter Homes, Inc. v. Prine*, 01-116 (La.App. 1 Cir. 2/15/02), 808 So.2d 818. Moreover, a forfeiture will also occur if an employee fails to truthfully answer an employer's inquiry as to any previous injuries, disabilities, or other medical conditions if the "failure to answer directly relates to the medical condition for which a claim for benefits is made." La.R.S. 23:1208.1.

The only fact in this matter which appears to be undisputed is that Bigge was employed by TLC on August 8, 2002. All other facts are disputed. Bigge alleged that he felt a sharp pain in his back when an especially heavy box hit his hands, causing him to fall to the floor. Of the three men he was working with, he stated that the employee loading the boxes onto the trailer possibly might have seen

4

the incident; however, he had never worked with any of the men and did not know their names.

After this incident, Bigge was driven by Malcolm Taylor, the Safety Director for TLC, to see Dr. Olga Reavill, a general practitioner, who diagnosed him with left sacroiliitis, or inflamation of the left sacroiliac joint, and severe pre-existing scoliosis. After injecting him and prescribing medication, she released Bigge to full work status as tolerated. He returned to her the next day and again on August 14, 2002. On August 14, he was given an excuse slip for work, for that date only. Bigge returned to work on August 23, 2002, but was only able to tolerate a few hours of work. He was terminated by TLC that same day.

Bigge testified that he only learned he suffered from scoliosis when told so by Dr. Reavill. Although he remembered a doctor telling him something like this years before, he did not remember it being scoliosis. He stated that he was terminated because TLC was told by Dr. Reavill that he should not be in that line of work. Bigge testified that he had performed construction work for fourteen years and that he had suffered back pain off and on since that time. He stated that he had suffered a previous work-related lower back injury while employed by Rayford Construction Company. He was treated by Dr. Michel Heard, an orthopaedic surgeon, beginning on October 26, 1998. Dr. Heard diagnosed Bigge as suffering from post-traumatic low back pain, with no fractures or neurological deficits, and felt that this was probably a soft tissue injury with radiculitis with pain into the left buttock. Although Bigge's past history was negative for similar problems, he told Dr. Heard that he had suffered frequent back aches, but had never been treated for any back problems or

5

injuries. Moreover, despite an extensive physical examination and x-rays taken of the lumbar spine, Dr. Heard made no finding of scoliosis.

After his termination by TLC, Bigge testified that he filed a claim for unemployment benefits with the Louisiana Department of Labor because he felt he was capable of working. However, this claim was denied. He stated that he started working as a volunteer for Lafayette Animal Aid on October 22, 2002. He stated that he lives on and oversees ten acres owned by the organization and that he cleans the kennels and feeds and medicates the abandoned animals kept there. Bigge further testified that he worked for Quality Drywall from approximately December 2002 through May 2003, performing the same type of work he did for TLC, at twelve dollars per hour.

Franziska Casey, a claims adjustor for LWCC, testified that she denied Bigge's claim for workers' compensation benefits based on several factors. The first factor was his Post-Offer Medical Inquiry form in which he stated that he had no prior medical conditions which would prove a hindrance to him performing his job duties. despite his being diagnosed with pre-existing severe scoliosis. The second factor was his August 16, 2002 recorded statement, in which he told Casey that he was diagnosed with scoliosis approximately fifteen years prior, but that it was slight and he did not think that it was causing a problem. When questioned about the Post-Offer Medical Inquiry, Bigge told Casey that he thought he noted his scoliosis and that he had a herniated disc, although he was unsure whether he actually had one. He further testified that at the time he filled out the Post-Offer Medical Inquiry that he did not feel his back would prevent him from performing the job duties of framing metal and

6

hanging drywall. The third factor cited by Casey was a controversy concerning a leave of absence taken by Bigge on July 26, 2002, prior to his injury. Casey stated that Bigge first told TLC that he was taking off two weeks after suffering a pinched nerve in his back while swimming. She stated that he later told his supervisor that he was taking time off because he needed to find a place to live after his girl friend threw him out of her house. The fourth factor was a 1999 claim by Bigge that he injured his neck while working for Roxco, which claim was denied because he told two co-workers that he injured his neck at home rather than work. The fifth and final factor was the fact that his August 8, 2002 incident was an unwitnessed accident.

Taylor testified that none of the three men working with Bigge on the morning of August 8, 2002, witnessed the accident. Although they were assisting in moving the boxes, he stated that he spoke with all three and that each said that they only saw Bigge lying on the floor and screaming after he hurt his back. Two of the men worked for the purchaser of the building and the third was a TLC employee. However, these persons' names were never provided to Bigge despite his interrogatory requesting the names of all witnesses having any knowledge of his accident or injury; nor, did they testify at the trial.

Taylor testified that Bigge was terminated because he lied on the Post-Offer Medical Inquiry when he failed to list scoliosis as a "permanent [condition] whether congenital or due to injury or disease, of such seriousness as to constitute a hinderance (sic) or obstacle to obtaining employment or to obtaining reemployment?" With regard to the controversy surrounding Bigge's leave of absence prior to this accident, Taylor testified that he first learned that Bigge was voluntarily leaving work

7

because he hurt his back in a swimming accident. However, he stated that Bigge later called and told him that he was ready to return to work, which he did for a couple of days. He testified that Bigge then contacted him two to three days later and told him that he had been thrown out of his girlfriend's house and that he was looking for a place to live. Taylor testified that he told Bigge to return to work when he was ready. He further stated that he assumed that Bigge's back injury had healed.

Carl Schexnayder, the drywall group project manager for TLC, testified that he interviewed Bigge prior to hiring him and was not told by him that he suffered from scoliosis or that he was involved in any previous workers' compensation claims. He recounted a conversation between him, Taylor, and Robert Whitehead, another TLC employee, and Bigge on August 16, 2002, subsequent to Bigge's alleged accident, but prior to his return to work and termination. He stated that Bigge, who was covered in mud, walked into the office told them that he had just rescued a Labrador Retriever, who was tangled up in brush along a river. At that point, Schexnayder testified that Bigge seemed fairly capable of working.

Dr. Reavill's medical notes from August 8, 2002, report that she discussed the need for Bigge "to treat this life long back problem [with] his family Doctor. Pt readily admit he has had life long episodes of low back pain and he knows he has scoliosis. Just recently he had another episode back pain [with] muscle spasms and tightness."

TLC also introduced the records of Dr. John Stafford, Bigge's family physician. The records reveal that Bigge was seen by Dr. Stafford on March 20, 1998, after suffering a work-related injury to his upper back while employed by

8

Roxco. On July 7, 2002, he requested a release to return to work from Dr. Stafford after he suffered an injury to his left-lower back while playing in a swimming pool. Dr. Stafford's medical records state:

> Patient has a history of recurrent back pain and spasm secondary to what he feels is an old injury from weight lifting 11 years ago. His back pain has been recurrent about every 6 months for the last 7 years. He has been seen by an orthopedic physician in the past. He has had plain film x-rays which reveal no evidence of abnormalities. The patient typically is treated by physicians for his back pain however this time he felt that he may treat himself and therefore stayed home. At this time he admits to much improvement in his back pain and only mild discomfort is noted.

Dr. Stafford noted full range of motion in Bigge's lumbar spine and mild subjective tenderness in the left lower back with right lateral bending. He diagnosed Bigge with a resolved lumbar back strain and returned him to regular work with precautions against heavy lifting, bending, or twisting.

In finding that Bigge proved he suffered a work-related accident on August 8, 2002, and that he did not violate La.R.S. 23:1208 and 1208.1, the workers' compensation judge stated oral reasons:

> Now, here's the problem. In a matter like this particular case, the Court must focus sharply and heavily on the credibility, the believability of the claimant absent any witness or at least a witness who would testify. Now, in all candor, I will state on the record what both parties know. Clarity of thought and expression is not this claimant's strong point. He does not present well. Alcohol and time have treated him badly and it shows. His present state of affairs is that he works for a local organization as some sort of caretaker in its facility for abandoned animals. His list of jobs is long, seemingly endless. He was probably never the employee of the month at any of them. He's spent a good deal of time in jail for his fourth offense DWI, and he looks as bad as this description makes him appear.
>
> All that having been said, I am required to determine whether he established by a preponderance of the evidence that he received personal injury by an accident arising in and out of the scope of his employment.

9

Is his version of what happened reasonable? His demeanor and countenance not withstanding, does what he say (sic) make sense? Was he, in fact, at the foot of a slide with boxes coming down at him? Well, testimony suggests he was, and not just his. We would know more for certain if the defense had bothered to make available the person who was pushing the boxes down the slide but they didn't. So we have to make due with what we heard under oath. Could one box been (sic) heavier than the other? Well, it seems so. Testimony from the company was that these were boxes of records, and nobody ever said that each box was precisely the same size, shape, and weight as the others. The defense's argument is – and again I'm paraphrasing – we didn't see him get hurt, and he never told the truth much anyway about anything, and there's two different ways to interrupt (sic) the medical reports; so we're not sending him to a doctor he wants to see.

I think there is certainly medical evidence showing a reasonable possibility of causal connection between the accident and what he describes as a disabling condition. The symptoms appeared and continuously manifested themselves following the accident. He may not have been a model physical specimen before, but he certainly worked as if he was. No one complained about his ability to do the jobs in either of the two times the company hired him. There is nothing to suggest that he ever represented himself as free from physical defect or that he ever intentionally deceived anyone about his ability to work. My assessment is that it would be relatively easy and convenient to dismiss the claimant's contentions if all one used was a superficial appraisal of his tone, demeanor and general appearance. As I said, he does not present well. But I don't think he's lying, malingering, or exaggerating.

I find that an accident occurred within the meaning of the statute, and he's entitled to proper workers' compensation indemnity and appropriate medical treatment to include seeing a physician of his choice. He carried his burden of proof, not artfully and not articulately but adequately under the Bruno standard. My sense is that the investigation fell short of a fair, open-mined (sic) search for the truth.

After reviewing the evidence, we find that the workers' compensation judge determined that two differing views of the evidence existed and that strictly based on credibility, Bigge proved that he suffered a work-related accident while employed by TLC. He further held that there were no violations of La.R.S. 23:1208 and 23:1208.1 by Bigge in his failure to report to TLC that he suffered from scoliosis

10

prior to this accident. TLC argues that because the workers' compensation judge found that Bigge did not present well, that this equates with him not being credible. However, we cannot agree with TLC's pronouncement. As the workers' compensation judge obviously found Bigge credible, this finding is entitled to great deference on review.

Furthermore, the workers' compensation judge was specific in stating that Bigge never "represented himself as free from physical defect or that he ever intentionally deceived anyone about his ability to work." Moreover, he found no instance in which Bigge was ever "lying, malingering, or exaggerating" about his condition. We would further note that based on Bigge's apparent mental acuity, we could envision that he might have misunderstood in the past if he was diagnosed with scoliosis, especially if a doctor only told him that he had curvature of the spine. Additionally, we note the fact that although he was previously examined by an orthopaedic surgeon and another physician, neither doctor's notes make mention of a diagnosis of scoliosis. X-rays of Bigge's lumbar spine were made in both instances as recent as October 1998 and July 2002, and no spinal abnormalities were noted. Accordingly, we find no error in the workers' compensation judge's finding that Bigge satisfied his burden of proving a work-related accident and that he did not violate the provisions of La.R.S. 23:1208 and 1208.1.

Furthermore, based on our affirmation of the workers' compensation judge's judgment finding that Bigge proved he suffered a work-related accident, we find no error in the award of indemnity benefits from August 8, 2002 through October 22, 2002, the date he began working for Lafayette Animal Aid. We further

11

affirm the judgment allowing Bigge to see a physician of his choice. Accordingly, TLC's assignments of error are dismissed as being without merit.

## PENALTIES AND ATTORNEY'S FEES

In its final assignment of error, TLC argues that the workers' compensation judge erred in assessing it with $4000 in penalties for its failure to initiate indemnity benefits and to allow Bigge to see a physician of his choice. It further argues the workers' compensation judge erred in awarding Bigge $6000 in attorney's fees.

The decision to award penalties and attorney's fees is factual in nature and will not be reversed on appeal absent manifest error. *Braxton v. Ryan's Family Steakhouse*, 04-148 (La.App. 3 Cir. 6/2/04), 878 So.2d 731. In this instance, the workers' compensation judge determined that LWCC's investigation into this matter "fell short of a fair, open-[minded] search for the truth." Consequently, we find no manifest error and affirm the workers' compensation judge's decision to award penalties and attorney's fees.

## CONCLUSION

For the foregoing reasons, the judgment of the workers' compensation judge is affirmed. The costs of this appeal are assessed to the defendant-appellant, The Lemoine Company.

**AFFIRMED.**