STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

05-533

DONOVAN MONCEAUX

VERSUS

R & R CONSTRUCTION, INC.

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT # 3
PARISH OF CALCASIEU, NO. 03-07918
SAM L. LOWERY, WORKERS' COMPENSATION JUDGE

**********

**ELIZABETH A. PICKETT**
**JUDGE**

**********

Court composed of Jimmie C. Peters, Marc T. Amy, and Elizabeth A. Pickett, Judges.

**AFFIRMED.**

Amy, J., dissents and assigns written reasons.

**Mark Zimmerman**
**Attorney at Law**
**4216 Lake Street**
**Lake Charles, LA 70605**
**Counsel for Claimant/Appellee:**
    **Donovan Monceaux**

**Thomas J. Solari**
**Woodley, Williams, Boudreau, Norman, Brown & Doyle**
**P. O. Box 3731**
**Lake Charles, LA 70602-3731**
**Counsel for Defendant/Appellant:**
    **R & R Construction, Inc.**

**Gregory E. Bodin**
**Russell L. Mosely**
**Taylor, Porter, Brooks &Phillips, L.L.P.**
**P.O. Box 2471**
**Baton Rouge, LA 70821**
**Counsel for Secondary Defendant/Appellant:**
**Louisiana Workers' Compensation Corp.**

Pickett, J.

**APPEAL**

The defendants are the claimant's employer, R & R Construction, Inc. R & R) and R & R's insurer, Louisiana Workers' Compensation Corporation (LWCC). The Office of Workers' Compensation's (OWC) judgment awarded the claimant, Donovan Monceaux, indemnity benefits and "all related medical treatment" retroactive to October 29, 2002, a penalty of $2,000.00 for the defendants' refusal to provide reasonable medical treatment and attorney's fees of $5,000.00 for defendants' failure to reasonably controvert the claim. The judgment also granted the defendants a dollar-for-dollar credit for wages R & R paid the claimant, in lieu of benefits, from December 29, 2002, through October 23, 2003, a total of $40,822.87. The defendants appeal the finding by the OWC judge that the claimant sustained an on-the-job injury in October of 2002. The claimant answered the appeal, seeking to have the credit awarded to the defendants made week for week rather than dollar for dollar. We affirm the judgment of the workers' compensation judge.

**FACTS**

We agree with the recitation of facts set out by the workers' compensation judge (WCJ) in his oral reasons for judgment:

> There is scant agreement between the parties on much of anything, save the fact that Mr. Monceaux was an employee at the time of the alleged incident and that his weekly wage was $940. The testimony of Mr. Monceaux and the company's representative could hardly have been more at variance about the alleged incident or the events thereafter.

> This claim arises as a result of an unwitnessed accident which allegedly occurred on or about October the 29th, 2002 when Mr. Monceaux says he was inspecting a vacuum unit 30 or 40 feet above ground at Citgo Oil and Lube Plant in Carlyss, Louisiana, in order to prepare a bid for work to be completed by his employer. He testified that while walking on a catwalk of the vacuum unit, he attempted to step

1

over a piece of pipe, slipped and fell backward on the grating landing on his buttocks and lower side.

Mr. Monceaux says that the next day he reported the accident to the risk manager for R & R, Inc., Gary Lemmons, by telephone. He contends that Mr. Lemmons and the president of the company, Mr. Ronnie Lovette, instructed him to file the accident on his private insurance rather than have the accident reported as a work related and, in exchange, he would be paid his full wages, $940 a week rather than workers' compensation benefits.

Mr. Monceaux was seen by several doctors after his alleged accident, including his family doctor, Dr. Kevin Schlamp, Dr. John Noble, an orthopedist, and Dr. Eric Wolf, a neurosurgeon. He ultimately underwent a posterior lumbar interbody fusion performed by Dr. Wolf on February the 5th, 2003 at St. Patrick's Hospital in Lake Charles.

At the trial, the claimant testified that Dr. Wolf subsequently performed a second back surgery approximately five weeks prior to the trial date. The first surgery was paid through the employee's private health insurance with Blue Cross/Blue Shield. According to the claimant, Dr. Wolf performed the second surgery free of charge because the claimant's health insurance had expired.

R & R Construction disputes Mr. Monceaux's claim that he was injured on the job. The employer denies that any such injury was reported. The employer flatly denies that Mr. Monceaux ever told his employer that his back pain was due to a job -- to an accident on the job. The employer disputes Mr. Monceaux's contention that he was ever instructed by his employer to report his work related accident to his private health carrier for treatment as being unrelated to work and in exchange for R & R Construction [C]ompany paying him full wages.

The claimant's deposition and hearing testimony is not entirely consistent with his medical records. In both instances, he stated that he thought the accident which causes his problems occurred "around" October 29, 2002. Dr. Kevin Schlamp, a family practitioner, is the claimant's family physician. The records from Dr. Schlamp's office show that the claimant sought treatment from Dr. Schlamp for constant pain in his lower back and right side with numbness and tingling extending into his right leg to the knee on October 18, 2002. The medical history take on that visit states: "No previous back problems" and further relates: "Pain for past 6

2

months." However, these complaints are consistent with the claimant's description of his fall and injuries. The same records also show two visits in April and May of 2002 for complaints of right foot pain. At those visits, the claimant did not complain of back or leg pain.

In May of 2002, the claimant also visited Dr. Timothy R. Van Cleve, a chiropractor, four times for his right foot pain. The medical history the claimant filled out at Dr. Van Cleve's office does indicate a history of low back pain, but we find no evidence that the claimant had any significant back problem prior to October 2002.

Dr. Schlamp diagnosed the claimant as having low back pain, but the records indicate no etiology for the diagnosis. The records of the claimant's November 13, 2002 visit indicate that he was being referred to Dr. John Noble, an orthopaedic surgeon.

Dr. Noble initially saw the claimant on December 4, 2002. Dr. Noble saw the claimant on just two occasions, the initial visit and a follow-up on December 11, 2002. He examined two myleograms and concluded they showed a "significant disc bulge at L4-5 with a pseudobulge with standing." He also examined a CT scan and was of the opinion that it showed "a diffuse disc bulge." Dr. Noble concluded the claimant was suffering from "dynamic spondylolisthesis" and referred him to Dr. Erich W. Wolf, II, a neurosurgeon, for further treatment.

Dr. Wolf's deposition was taken on June 29, 2004. In his deposition, Dr. Wolf stated that during the taking of his medical history on January 15, 2003, the claimant related that his pain "was present since March or April of 2002, and that it had developed steadily over several months." Once again, the claimant's medical history failed to show any claim of an accident, but rather explained his symptoms had started

3

about eight months previously "after lifting." Dr. Wolf further stated that the claimant denied the pain was associated with any trauma. However, Dr. Wolf also stated that the claimant "has told me in the past that this is work-related" and said that he made a note in the claimant's chart on February 12, 2004, that the claimant related "that there are some legal proceedings regarding his Workers' Compensation claim and this is still pending." His records also indicate that the claimant could have told him or his staff that the claimant's condition was work related sometime before November 6, 2003, when an "unable to return to pre-injury work" slip was prepared.

In summary of the claimant's condition, Dr. Wolf stated:

Basically, the patient had a PARS defect, which is a defect in the joint, at the L4-5 level, which resulted in a spondylolisthesis, which is an abnormal shifting of the bones. He also had some degenerative disc disease at the L3-4 and L4-5 levels. We essentially did a discogram to determine whether or not those discs were symptomatic. Based upon the results of that, we subsequently did an operation called a "posterior lumbar interbody fusion" at those two levels.

The patient initially did well. He had improvement in his lower extremity pain. However, he did continue to have some back pain, which was normal in the perioperative period. However, he did develop some abnormal fluid collections behind these implants. We did some tests to make sure he had no infection, and, indeed, he did have no infection. However, there was felt to be some inflammatory process at work.

The patient continued to have problems with his low back pain, and we were hoping that he would go on to a fusion. However, ultimately, he did not, meaning that his bone did not grow together. He continued to have low back pain, and we talked about different treatments for this, which would eventually require a re-do fusion at the L-3 and L4-S levels.

That re-do was performed about five week before this matter went to trial. Dr. Wolf confirmed that the PARS defect and the spondylolisthesis could have been caused by a fall in October 2002.

Both in his deposition and at trial, the claimant asserted that he did fall while

4

on the job in October 2002 and that he made up stories about the etiology of his symptoms at the request of his employer so that he could use his private insurance, thus avoiding a workers' compensation claim.

As the WCJ observed, the claimant's employer denied the claimant was injured on the job and denied it requested he use his private medical insurance to avoid the filing of a workers' compensation claim. However, the fact remains that the employer paid the claimant his full weekly wage between December 29, 2002 and October 23, 2003. It was not until the employer received a letter from the claimant's attorney, on October 29, 2003, informing the employer of a pending compensation claim, that the payments ended.

## LAW AND DISCUSSION

In *Dean v. Southmark Construction*, 03-1051, p. 7 (La. 7/6/04), 879 So.2d 112, 117, the supreme court discussed the standard of review in workers' compensation cases:

> In worker's compensation cases, the appropriate standard of review to be applied by the appellate court to the OWC's findings of fact is the "manifest error-clearly wrong" standard. *Brown v. Coastal Construction & Engineering, Inc.*, 96-2705 (La.App. 1 Cir. 11/7/97), 704 So.2d 8, 10, (citing *Alexander v. Pellerin Marble & Granite*, 93-1698, pp. 5-6 (La.1/14/94), 630 So.2d 706, 710). Accordingly, the findings of the OWC will not be set aside by a reviewing court unless they are found to be clearly wrong in light of the record viewed in its entirety. *Alexander*, 630 So.2d at 710. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. *Robinson v. North American Salt Co.*, 02-1869 (La.App. 1 Cir.2003), 865 So.2d 98, 105. The court of appeal may not reverse the findings of the lower court even when convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Robinson*, 865 So.2d at 105. The determination of whether injury occurred in the course and scope of employment is a mixed question of law and fact. *Winkler v. Wadleigh Offshore, Inc.*, 01-1833 (La.App. 4 Cir. 4/24/02), 817 So.2d 313, 316 (citing *Wright v. Skate Country, Inc.*,

5

98-0217 (La.App. 4 Cir. 5/12/99), 734 So.2d 874).

Recently, this court addressed a claimant's burden in proving the he/she suffered a work-related accident:

In order to recover workers' compensation benefits, an injured employee must prove by a preponderance of the evidence that he suffered a "personal injury by accident arising out of and in the course of his employment." La.R.S. 23:1031(A). An "accident" is defined as an "unexpected or unforseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." La.R.S. 23:1021(1).

The Louisiana Supreme Court, in *Bruno v. Harbert International Inc.*, 593 So.2d 357, 361 (La.1992), expounded on what proof will satisfy an employee's burden in proving a work-related injury:

A worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. *West v. Bayou Vista Manor, Inc.*, 371 So.2d 1146 (La.1979); Malone and Johnson, *13 Louisiana Civil Law Treatise, Workers' Compensation*, § 253 (2d Ed.1980). Corroboration of the worker's testimony may be provided by the testimony of fellow workers, spouses or friends. Malone & Johnson, *supra*; *Nelson v. [Roadway Express, Inc.*, 588 So.2d 350 (La.1991) ]. Corroboration may also be provided by medical evidence. *West, supra*.

In determining whether the worker has discharged his or her burden of proof, the trial court should accept as true a witness's uncontradicted testimony, although the witness is a party, absent "circumstances casting suspicion on the reliability of this testimony." *West*, 371 So.2d at 1147; *Holiday v. Borden Chemical*, 508 So.2d 1381, 1383 (La.1987). The trial court's determinations as to whether the worker's testimony is credible and whether the worker has discharged his or her burden of proof are factual determinations not to be disturbed on review unless clearly wrong or absent a showing of manifest error. *Gonzales v. Babco Farm, Inc.*, 535 So.2d 822, 824 (La.App. 2d Cir.), *writ denied*, 536 So.2d 1200 (La.1988) (collecting cases).

As stated in *Rosell v. ESCO*, 549 So.2d 840, 844-45 (La.1989) (citations omitted):

6

> When findings are based on determinations regarding the credibility of witnesses, the manifest error--clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.

*Bigge v. The Lemoine Co.*, 04-1191, pp. 2-4 (La.App. 3 Cir. 3/2/05), 896 So.2d 269, 271-72.

This case is unique in that the claimant testified he did not initially file a workers' compensation claim at the request of his employer and in that the employer continued to pay its employee his full salary until a claim was filed. We are impressed by the following in the WCJ's oral reasons for judgment:

> The response to the claim is, if not novel, is one at least I have not heard before. Succinctly paraphrased, it is that he [the employer] is the victim of his own generosity. His explanation of events is that about the time of the alleged incident Mr. Monceaux came to Mr. Lemmons, the safety manager for the construction firm, and said that his back hurt and that he needed to take time off from work. The testimony from Mr. Lemmons is that the employer was never given so much as a hint that Mr. Monceaux was hurt on the job. He just told Mr. Monceaux to go home and that his paycheck would continue. He did and it did. For nearly a year, the employer paid Mr. Monceaux, who was at home not working, a total of $42,300 at the rate of $940 a week. No investigation was done by the employer and he simply told the employer [sic] to go home. The employer says this $42,300 was little more than a reflection of the care and concern he has always shown for his employees. Mr. Monceaux says the $42,300 was more properly a reflection of the employer's efforts to dodge a workers' compensation claim. As Mr. Monceaux's counsel points out cynically perhaps, but correctly nonetheless, this generosity continued until just about the time that

7

prescription would have run on any workers' compensation claim. These payments stopped only when the employer discovered that Mr. Monceaux, in fact, had hired an attorney.

The safety manager admitted it is to the employer's financial advantage not to report a workers' compensation claim unless necessary, hardly a revelation to anyone. But the safety man, for reasons also stemming from a desire to help the employee, said he made arrangements for Mr. Monceaux to see an orthopedic surgeon, to treat this physical malady which was in no way job connected.

Generosity flows deep in this particular company. A lot deeper than credibility.

We agree with the conclusion drawn by the WCJ. The WCJ had the choice of believing an employee who admitted he lied about how he sustained his injuries and an employer who is just too good to be true.

After examining the record, we cannot conclude that the WCJ was manifestly erroneous in his conclusions.

As to the claimant's answer to the defendants' appeal, we find it without merit. In his brief, the claimant cites *Futrell v. Hartford Accident & Indemnity Co.*, 276 So.2d 271 (La.1973) and *Carter v. Continental Assurance Co.*, 554 So.2d 688 (La.App. 3 Cir. 1989), for the proposition that the credit due an employer for gratuitous payment in lieu of compensation is to be given on a week to week, rather than a dollar-for-dollar basis. In *Hebert v. Terrebonne Parish School Board*, 03-1444, pp. 4-5 (La.App. 1 Cir. 5/14/04), 879 So.2d 222, 226, our colleagues of the first circuit observed:

Louisiana Revised Statutes 23:1206 provides as follows:

Any voluntary payment or unearned wages paid by the employer or insurer either in money or otherwise, to the employee or dependent, and accepted by the employee, [which] were not due and payable when made, may be deducted from the payments to be made as compensation.

8

This statute entitles an employer to a credit for previous overpayments from future compensation, which may be due. *Fontenot v. Trans Gulf, Inc.*, 95-0342, pp. 18-19 (La.App. 1st Cir. 11/9/95), 664 So.2d 1238, 1250. Further, this statute applies even if the overpayment is due to the employer's error in calculating benefits. *Ferrand v. D.H.L. Co.*, 614 So.2d 350, 354 (La.App. 4th Cir.1993)

We note that the 1914 and 1950 versions of the statute included the following phrase:

"[S]uch deduction shall be made by shortening the period during which compensation shall be paid, and not by reducing the amount of the weekly [1914 version][weekly replaced by periodic in 1926] payments." As the first circuit noted in *Ringo v. Hawco Manufacturing*, 582 So.2d 987, 988 (La.App. 1 Cir. 1991), La.R.S. 23:1206 "no longer prohibits dollar-for-dollar credit to the employer or insurer for overpayments. *Jim Walter Homes v. Lewis*, 544 So.2d 485 (La.App. 2nd Cir.1989); and *Breaux v. Petro Drive, Inc.*, 534 So.2d 48 (La.App. 3rd Cir.1988)." In *State v. Johnson*, 03-2993, pp. 14-15 (La. 10/19/04), 884 So.2d 568, 576-77, the supreme court set out several rules governing statutory construction:

> First, those who enact statutory provisions are presumed to act deliberately and with full knowledge of existing laws on the same subject, with awareness of court cases and well-established principles of statutory construction, and with knowledge of the effect of their acts and a purpose in view. *Theriot* [*v. Midland Risk Insurance Co.*, 95-2895 (La.5/20/97), 694 So.2d 184, 186], 95-2895 at 3-4, 694 So.2d at 186-187; *State v. Louisiana Riverboat Gaming Commission and Horseshoe Entertainment*, 94-1872, 94-1914, p. 17 (La.5/22/95), 655 So.2d 292, 301 n. 10. Second, when the legislature changes the wording of a statute, it is presumed to have intended a change in the law. *SWAT 24 Shreveport Bossier, Inc. v. Bond*, 00-1695, p. 17 (La.6/29/01), 808 So.2d 294, 305 ("'[W]here a new statute is worded differently from the preceding statute, the legislature is presumed to have intended to change the law.'") (*quoting Brown v. Texas-LACartage, Inc.*, 98-1063, p. 7 (La.12/1/98), 721 So.2d 885, 889); *Louisiana Civil Service League v. Forbes*, 258 La. 390, 414, 246 So.2d 800, 809 (La.1971) ("[T]he Legislature is presumed to have enacted a statute in light of preceding statutes involving the same subject matter and decisions construing such statutes, and, where the new statute is worded differently from the preceding statute, the Legislature is presumed to have intended to change the law.").

Considering the foregoing first circuit cases and the rules of statutory construction as set out by the supreme court in *Johnson*, we find no error in that portion of the WCJ's judgment that the defendants be given a dollar-for-dollar credit for the voluntary overpayment to the claimant.

Accordingly, for the reasons stated above, the judgment of the workers' compensation judge is affirmed. Costs of this appeal are assessed against the defendants, R & R Construction, Inc. and Louisiana Workers' Compensation Corporation.

**AFFIRMED.**

NUMBER 05-533

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

DONOVAN MONCEAUX

VERSUS

R & R CONSTRUCTION, INC.

AMY, J., dissenting.

I respectfully dissent from the majority opinion. Mr. Monceaux seeks recovery for an unwitnessed work-related accident and attempts to establish that occurrence through his own testimony.

In *Bruno v. Harbert International, Inc.*, 593 So.2d 357 (La.1992), the Louisiana Supreme Court explained that a claimant's testimony, alone, may satisfy the burden of proving a work-related accident by a preponderance of evidence. However, two elements must be satisfied. First, the record must contain no other evidence that discredits or casts serious doubts on the claimant's version of events. Further, the claimant's testimony must be corroborated by circumstances following the alleged work-related accident. *Id.* This corroboration may be supplied by "the testimony of fellow workers, spouses or friends." *Id.* at 361. Medical evidence may also provide the needed corroboration. *Id.*

In my opinion, Mr. Monceaux's presentation does not satisfy the above requirements. In short, he alone testified regarding the existence of a work-related accident. His version of events regarding the reporting of the accident and injury was squarely at odds with that of Gary Lemmons, the employer's Human Resources Manager and Safety Director. Furthermore, given the nature of Mr. Monceaux's claim regarding the alleged scheme to avoid filing a workers' compensation claim,

he failed to produce positive evidence of circumstances that would have corroborated his version of events.

Due to the dictates of the supreme court in *Bruno*, and the state of the contested testimony in the record, I conclude that the workers' compensation judge was manifestly erroneous in finding that the claimant satisfied his burden of proving the existence of a work-related accident. Accordingly, I would reverse the ruling entered in favor of the claimant as well as the award of penalties and attorney's fees.

For these reasons, I dissent.