STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

WCA 06-510


DAVID MULLINS

VERSUS

CONCRETE & STEEL ERECTORS


**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 2
PARISH OF RAPIDES, NO. 03-04348
JAMES L. BRADDOCK, WORKERS' COMPENSATION JUDGE

**********

BILLY HOWARD EZELL
JUDGE

**********

Court composed of Oswald A. Decuir, Marc T. Amy, and Billy Howard Ezell, Judges.


REVERSED IN PART; AFFIRMED AS AMENDED.


Linda Lea Smith Blackman
Attorney at Law
Post Office Box 8490
Bossier City, LA 71113
(318) 742-4713
Counsel for Defendant/Appellant:
Concrete & Steel Erectors

**George Arthur Flournoy**
**Flournoy, Doggett & Losavio**
**P. O. Box 1270**
**Alexandria, LA 71309-1270**
**(318) 487-9858**
**Counsel for Plaintiff/Appellee:**
**David Mullins**

**EZELL, JUDGE**.

Concrete & Steel Erectors, Inc. appeals a workers' compensation ruling that David Mullins was entitled to temporary total disability benefits. Mullins answered the appeal asking for an additional penalty for the discontinuance of payment for medical treatment and also asking for an increase in attorney fees.

## FACTS

David Mullins was employed with Concrete & Steel Erectors, Inc. On May 8, 2003, Mr. Mullins was on a job in Gulfport, Mississippi when an accident occurred. At the time of the accident, he was setting precast concrete walls, using two-by-four boards to keep the walls from breaking out. While performing this task, one of the two-by-four boards slipped out and hit Mr. Mullins on the head, knocking off his hard hat, and then hitting him on the right shoulder. The accident report indicates that the board fell about twelve to fifteen feet while Mr. Mullins alleges twenty-five to thirty feet.

The accident occurred on a Thursday, so the entire work crew returned to Baton Rouge that evening for the weekend. After Mr. Mullins returned home to Alexandria, he went to Rapides Regional Medical Center on May 11, 2003, complaining that he had been having a migraine headache since the accident. He also complained of weakness and tingling in his right arm. He was diagnosed with acute myofascial cervical strain.

On May 14, 2003, Mr. Mullins went to the Edgewood Walk-In Clinic, still complaining of migraine headaches and right shoulder pain radiating into the arm. He returned to the clinic on several more occasions. An MRI of the cervical spine revealed some degenerative disc changes, most prominently at the C3-4 and C4-5 level, but not to a magnitude to cause cord or foraminal area compression. On June

1

9, 2003, Dr. Jorge Tapia with the clinic reported that Mr. Mullins was not able to work at this time.

On June 27, 2003, Mr. Mullins started physical therapy with Louisiana Physical Therapy Centers at the request of Dr. Robert Rush who evaluated Mr. Mullins on June 25, 2003. At that time, Dr. Rush issued a one-week work excuse. Dr. Rush saw Mr. Mullins on several more occasions. On the September 10, 2003 visit, Dr. Rush noted that Mr. Mullins was still complaining of severe neck, right arm, and right shoulder pain. He recommended a neurological consultation and opined that Mr. Mullins was at risk for developing chronic pain syndrome with depression.

Mr. Mullins went to Christus St. Francis Cabrini Hospital on January 22, 2004, indicating that pain in his right neck, shoulder, and arm from the accident had decreased but that it resumed after he turned his head abruptly two days before. He was prescribed some medication and discharged.

Dr. Rush last saw Mr. Mullins on February 3, 2004; he was still complaining of pain in the right shoulder. On February 27, 2004, Dr. Rush referred Mr. Mullins, who was indigent, to the LSU Health Sciences Center in Shreveport because he received notice that there was no further authorization for Mr. Mullins' treatment.

Mr. Mullins began treatment at the LSU hospital in Shreveport in May 2004. While treating at LSU, Mr. Mullins had an EMG which indicated right carpal tunnel syndrome. During his treatment, Mr. Mullins' complaints remained the same; headaches, neck and shoulder pain, and right hand numbness and tingling. The doctor in the orthopedics section opined that nothing could be done for the neck and shoulder pain since it was muscular in origin. He did encourage Mr. Mullins to pursue massage and sent him to physical therapy for a home program for neck and right shoulder range of motion and strengthening. He also had nothing to offer for

the headaches. Further evaluation was recommended for the carpal tunnel syndrome.

Concrete & Steel Erectors denied Mr. Mullins suffered a compensable injury and only paid $254.00 for services rendered by Dr. Rush. Mr. Mullins filed a disputed claim for compensation on June 16, 2003. A hearing on the matter was held on June 28, 2005. A judgment was signed on February 9, 2006. The workers' compensation judge (WCJ) determined that Mr. Mullins did suffer a work-related injury and awarded temporary total disability benefits from the date of injury and continuing in accordance with La.R.S. 23:1221(1). The WCJ also ordered reimbursement of all medical expenses for treatment of the injuries and continuing medical treatment. A penalty in the amount of $4,000.00 was awarded for nonpayment of indemnity benefits and nonpayment of medical bills at Rapides General Hospital and the Edgewood Walk-In Clinic. Mr. Mullins' claim for penalties due to discontinuance of medical payments was denied. Attorney fees in the amount of $7,500.00 were also awarded.

Concrete & Steel Erectors appealed the judgment. It claims that the WCJ erred in finding that Mr. Mullins was injured and entitled to temporary total disability benefits and reimbursement of medical expenses as a result of the claim. It further argues that the WCJ erred in not finding Mr. Mullins violated the provisions of La.R.S. 23:1208 and La.R.S. 23:1208.1, thereby forfeiting any right to benefits. It also complains of the award of penalties and attorney fees.

Mr. Mullins answered the appeal asking for an increase in attorney fees for work necessitated by the appeal. He also asks for an award of penalties and attorney fees due to the discontinuance of medical benefits.

3

## INJURY

Concrete & Steel Erectors argues that the WCJ was erroneous in concluding that Mr. Mullins established by a preponderance of the evidence that he is disabled and unable to earn his pre-accident wages. It argues that the medical evidence fails to substantiate objective signs of injury and fails to provide a relationship between the ongoing complaints of Mr. Mullins and the original accident.

Findings of fact made by a WCJ are subject to the manifest error/clearly wrong standard of review. *Alexander v. Pellerin Marble & Granite*, 93-1698 (La. 1/14/94), 630 So.2d 706. The record must be reviewed in its entirety to determine if there is manifest error. *Id*.

It was stipulated that Mr. Mullins did suffer an accident. The accident was witnessed by Lionel Redman. At trial Mr. Redman testified that Mr. Mullins held his shoulder for a while and then went back to work. He also testified that Mr. Mullins was able to drive home.

As the medical evidence established, Mr. Mullins continued to be bothered with a headache and pain in his right neck, shoulder, and arm, so he sought medical treatment when he got home. His complaints have been consistent with each medical provider he has seen. No medical evidence disputes the fact that Mr. Mullins suffers from an injury.

Concrete & Steel Erectors questions the validity of Mr. Mullins' complaints to the medical providers. It directs the court's attention to several instances when Mr. Mullins was able to physically do more than he testified he could do. Concrete & Steel Erectors introduced videotape evidence of Mr. Mullins using his right hand to flag for Russell Morace Mobile Home Movers. It also introduced the testimony of Joyce Spears who testified that Mr. Mullins was able to lift a tool chest by himself

4

about two weeks after the accident. Mr. Mullins also admitted that he was able to clean out a sewer line and hand tools to a friend while at work.

None of these incidents show that Mr. Mullins was able to use his right arm consistently following the accident. As explained by Mr. Mullins, the pain is worse on some days. He has never said he has no use of his right arm. The use is just limited. It is reasonable to assume that on occasion he will have less pain and have better use of his arm. We cannot say that the WCJ's decision was manifestly erroneous.

## FORFEITURE

Concrete & Steel Erectors next claims the WCJ erred in denying its defenses that Mr. Mullins violated La.R.S. 23:1208 and La.R.S. 23:1208.1. It argues that he presented false and misleading statements as to his physical condition, ability to perform work and activities, and the nature of his preexisting degenerative conditions.

> [I]n order for an employer to prove forfeiture pursuant to La.R.S. 23:1208, it must prove that a false representation was willfully made by the employee for the purpose of obtaining compensation benefits. *Resweber v. Haroil Constr. Co.*, 94-2708, 94-3138 (La.9/5/95), 660 So.2d 7. An inadvertent or inconsequential false statement will not result in the forfeiture of benefits. *Jim Walter Homes, Inc. v. Prine*, 01-116 (La.App. 1 Cir. 2/15/02), 808 So.2d 818. Moreover, a forfeiture will also occur if an employee fails to truthfully answer an employer's inquiry as to any previous injuries, disabilities, or other medical conditions if the "failure to answer directly relates to the medical condition for which a claim for benefits is made." La.R.S. 23:1208.1.

*Bigge v. The Lemoine Co.*, 04-1191, p. 4 (La.App. 3 Cir. 3/2/05), 896 So.2d 269, 272.

## La.R.S. 23:1208.1

Concrete & Steel Erectors complains that Mr. Mullins made false statements concerning prior injuries in his employment paperwork. In making his analysis on this issue, the WCJ cited the supreme court decision of *Nabors Drilling USA v. Davis*, 03-136 (La. 10/21/03), 857 So.2d 407, which observed that forfeiture is a harsh

5

remedy, and therefore, forfeiture statutes must be strictly construed. With regard to La.R.S. 23:1208.1, the supreme court noted that the employer must prove three elements: "(1) an untruthful statement; (2) prejudice to the employer; and (3) compliance with the notice requirements of the statute." *Nabors Drilling USA*, 857 So.2d at 414. The absence of any one of these is fatal to the employer's avoidance of liability under the statute. *Id*.

The WCJ found that there was no problem with the notice requirement. Concrete & Steel Erectors argues that Mr. Mullins was untruthful because it discovered that he had filed two prior workers' compensation claims. In determining whether there was an untruthful statement, the WCJ summarized the testimony regarding Mr. Mullins' ability to read and write as follows:

> And interesting we spent a lot of time at this trial trying to prove that Mr. Mullins was capable of reading, writing and appropriate level of comprehension for an adult. Along those lines, the employer introduced "Exhibit D-3," a report from Richard Galloway, a certified rehabilitation counselor, dated April 27th of 1987, and Mr. Galloway performed some functional testing of Mr. Mullins on that occasion. He performed a Simpson Intelligence Test which was a verbal test. He noted there that he had an IQ of 64 which placed him in the first percentile of the general population. There was a Wide Range Achievement Test performed. He read below the third grade level. He spelled below the third grade level. And it appears to me that, perhaps, his arithmetic may have been the third grade equivalent. And Mr. Galloway's conclusion was that Mr. Mullins was functionally illiterate, and he even noted in his report that when Mr. Mullins was there that Mr. Mullins had no idea as to why he had been asked to see Mr. Galloway and he said he was there after Mr. Galloway exchanged a lengthy discussion explaining the reason why Mr. Mullins was there for a vocational evaluation. Now, we had a lot of testimony and a lot of exhibits shown to Mr. Mullins at trial and essentially all Mr. Mullins did was identify his signature to a lot of tests, job applications, those types of things. And then we came to the testimony of Mr. Burl Duncan who had been a former supervisor of Mr. Mullins when he worked at Qualified Contractors, Incorporated. Apparently, the employer had discovered that Mr. Mullins had worked there previously and through the general knowledge that to do the type of turbine work that Mr. Mullins did there at various plants, he had to be aware of safety procedures and things of that nature. So he introduced a lot of exhibits of safety testing that bore Mr. Mullins [sic] signature and he – and he identified his signature. However, when Mr. Burl

6

Duncan testified and he was shown these same exhibits which bore Mr. Burl Duncan's name, Mr. Burl Duncan said those were – that was his name but that was not his signature. He had said his foreman usually signed his name and to his knowledge, these tests could have been performed orally.

We came to the testimony of Ms. Joyce Spears who at that time was the girlfriend of Mr. Keith Redman who was Mr. Mullins' supervisor on the job in Gulfport, Mississippi, and Ms. Spears was not an employee of Concrete & Steel Erectors. And when she testified after a lengthy day of document review by Mr. Mullins, she testified that Mr. Mullins did not fill out the employment papers for Concrete & Steel Erectors. That she filled those out and he merely signed his name. So I am not convinced at all that it was ever established to any degree and satisfaction that Mr. Mullins could read or he could write. Mr. Mullins testified that before he signed this paperwork he had already been hired by Concrete Steel & Erectors. And we had a comptroller testify, a Mr. Rick [Richard] Edmonds, who in his testimony said that there were occasions when they had to hire people rapidly and they were done before all the paperwork was necessary.

The WCJ then went on to say that the employment paperwork utilized by Concrete Steel & Erectors was very loose. Apparently, the WCJ found that there was no proof that Mr. Mullins made an untruthful statement since other people were involved in the completion of the paperwork and apparently Mr. Mullins had profound intellectual problems.

The court further discussed the prejudice requirement, examining the effect of Mr. Mullins' prior injuries on his present injury. At trial Mr. Mullins admitted that he had injured his right shoulder when working for a previous employer. However, he explained that the condition had resolved prior to this accident. Mr. Mullins also hurt his back while working with Mr. Duncan. However, Mr. Duncan testified that Mr. Mullins did not work for a period of time but did come back to work. These accidents were also several years before the present accident.

We agree with the WCJ that there is no evidence that these past injuries made it more likely that Mr. Mullins would be injured when the two-by-four fell on him. We find no manifest error in the WCJ's decision that there was no violation of La.R.S.

7

23:1208.1.

**La.R.S. 23:1208**

Regarding the La.R.S. 23:1208 claim, the WCJ reviewed the evidence of Concrete & Steel Erectors that Mr. Mullins was able to perform physically better than he testified to, the videotape of Mr. Mullins flagging and driving an escort truck for a mobile home moving company, and the fact that Mr. Mullins sold scrap material.

As mentioned by the WCJ, the evidence established that, from the very beginning of this case, Summit Consulting, who managed the case, sought to defend this claim. Evidence revealed that $50,000.00 was authorized to establish fraud. The compensability of this claim was denied in July 2003 based only on the records from the Edgewood Clinic. Phillip Moory, a special investigator with Summit, testified that he did not even speak to the doctor but only spoke to personnel at the clinic. He did not recall seeing any specific record which indicated that Mr. Mullins could return to work.

We agree with the WCJ that there was no willful misstatement made by Mr. Mullins in an attempt to obtain workers' compensation benefits. His complaints have been consistent since the accident. Furthermore, there is no evidence that any physical actions on his part were ever extraordinary. As previously mentioned, Mr. Mullins testified that some days were better than others. He was not able to perform the same work that he did previously at the mobile home moving company, and he did not receive any payment for the services.

**PENALTIES AND ATTORNEY FEES**

Concrete & Steel Erectors finally claims that the trial court erred in awarding penalties for failure to pay the Edgewood Clinic bill and wage benefits. It also claims that the award for attorney fees is erroneous. It claims that penalties and attorney fees

8

should not be awarded given the lack of objective evidence of injury, exaggerations and false statements contradicted by videotaped activities, lack of medical evidence or reports relating the complaints to the original injury, and numerous discrepancies that fail to corroborate Mr. Mullins' allegations of an accident and injuries.

> Awards of penalties and attorney fees in workers' compensation cases are essentially penal in nature, and are imposed to deter indifference and undesirable conduct by employers and their insurers toward injured workers. *Williams v. Rush Masonry, Inc.*, 98-2271, pp. 8-9 (La.6/29/99), 737 So.2d 41, 46. While the benefits conferred by the Workers' Compensation Act are to be liberally construed, penal statutes are to be strictly construed. *Id*. at p. 9, 737 So.2d at 46.

*Trahan v. Coca-Cola Bottling Co. United, Inc.*, 04-100, p.17 (La. 3/2/05), 894 So.2d 1096, 1108.

Furthermore, " 'the purpose of an imposition of penalties is to "nudge the employer into making timely payments when there is no reasonable basis for refusing or delaying its obligation.' " *Thomas v. Browning-Ferris, Inc.*, 04-1584, p.1 (La. 2/25/05), 894 So.2d 1091 (*quoting Brown v. Texas-LA Cartage, Inc.*, 98-1063, p. 13 (La. 12/1/98), 721 So.2d 885, 893 (*quoting Weber v. State*, 93-62, p. 8 (La. 4/11/94), 635 So.2d 188, 193)).

**Penalty for Failure to Pay Medical Expenses**

In oral reasons for judgment the WCJ awarded a penalty of $2,000.00 for failure to pay the bill at the Edgewood Clinic and at Rapides General Hospital. Concrete & Steel Erectors claims that this was in error because there was a failure to prove that it received demand for payment for the Edgewood Clinic bill. *See Maricle v. Sunbelt Builders, Inc.*, 05-398 (La.App. 3 Cir. 11/2/05), 916 So.2d 1226, *writ denied*, 05-2506 (La. 3/31/06), 925 So.2d 1261.

9

While there is evidence of a request from Summit to the Edgewood Clinic for copies of bills, there is no evidence that any demand was ever made for payment of bills incurred at either the Edgewood Clinic or Rapides Parish General Hospital. Mr. Moory testified that no bill was ever received from the Edgewood Clinic. We, therefore, find manifest error in the award of penalties for nonpayment of these bills.

**Penalty for Discontinuance of Payment for Medical Treatment**

The WCJ refused to award a penalty for discontinuance of payment for treatment of Mr. Mullins by Dr. Rush finding that the discontinuance occurred prior to the effective date of La.R.S. 23:1201(I).[1] In his answer to the appeal, Mr. Mullins claims that this was error because the discontinuance occurred after the effective date of La.R.S. 23:1201(I).

Subsection I was added by 2003 La. Acts No. 1204, § 1 and was effective on August 15, 2003. The law in effect at the time of the denial of benefits governs a workers' compensation claimant's request for penalties and attorney fees. *Reed v. Abshire*, 05-744 (La.App. 3 Cir. 2/1/06), 921 So.2d 1224; *Rivera v. M & R Cable Contrs., Inc.*, 04-985 (La.App. 3 Cir. 12/17/04), 896 So.2d 90; *Skipper v. Acadian Oaks Hosp.*, 00-67 (La.App. 3 Cir. 5/3/00), 762 So.2d 122.

An itemized statement of Dr. Rush's services indicates that he last received payment for his services on September 26, 2003. Furthermore, his office notes indicate that Dr. Rush received notice on February 27, 2004, that authorization for payment of Mr. Mullins' medical expenses had been withdrawn. Therefore, we find that Mr. Mullins would be entitled to a penalty if he established that the discontinuance was arbitrary, capricious, or without probable cause.

---

[1] The WCJ inadvertently referred to the statute as La.R.S. 23:1208.1 in his oral reasons.

10

Mr. Moory, the investigator assigned to the claim, testified that he received the case around June 20, 2003. He agreed that he spent around $41,000 investigating this claim. The only records he used to deny the claim were the records from the Edgewood Clinic. He admitted that he had no information that an accident had not occurred and had no record that stated that Mr. Mullins could return to work. He also spoke to the Redmans and reviewed the second injury fund questionnaire.

From the very beginning, it is obvious that Summit set out on a mission to establish fraud. No effort was made to ascertain the true medical condition of Mr. Mullins when there is no question that a two-by-four fell from a distance and hit his right shoulder. This behavior exhibited by Summit is most egregious and insults the purpose of the Workers' Compensation Law. Therefore, we find the WCJ was clearly wrong in failing to award a penalty for discontinuing payment of medical benefits to Dr. Rush. We find that, under the circumstances, Mr. Mullins is entitled to the maximum penalty for the violation that occurred after the effective date of La.R.S. 23:1201(I) in the amount of $8,000.00.

**Penalty for Failure to Pay Wage Benefits and Award of Attorney Fees**

Concrete & Steel Erectors also claims that the trial court erred in awarding a $2,000.00 penalty for failure to pay wage benefits and in awarding an attorney fee of $7,500.00. It argues that the claim was reasonably controverted through investigation and review of medical records. Based on the above discussion, we disagree and affirm this award.[2]

In his answer to the appeal, Mr. Mullins asked for an increase in the award of attorney fees for work necessitated by this appeal. Considering the issues discussed

---

[2] We note that La.R.S. 23:1201(I) now provides that the award of multiple penalties is subject to an $8,000.00 cap. However, a determination not to pay compensation benefits was made on June 27, 2003, before the August 15, 2003 effective date of La.R.S. 23:1201(I). Therefore, the cap would not apply to limit this penalty award.

11

in this appeal and the additional work required, we find that an increase in attorney fees is warranted. We find that $1,500.00 is an appropriate amount.

For the reasons set forth in this opinion, we reverse the penalty award of $2,000.00 for failure to pay the Edgewood Walk-In Clinic bill and the Rapides Parish General Hospital bill. We award a penalty of $8,000.00 for discontinuing payment for Dr. Rush's services. We also amend the judgment to provide for an additional attorney fee in the amount of $1,500.00 for work necessitated by this appeal. The judgment is affirmed in all other respects.

**REVERSED IN PART; AFFIRMED AS AMENDED.**